# STRODE, Curator, etc., v. ST. LOUIS TRANSIT COMPANY, Appellant.

### In Banc, June 20, 1906.

1. **NEGLIGENCE: Instruction: Disease of Deceased.** An instruction which tells the jury that if at the time the injured party was struck by defendant's car he was afflicted with a disease of which he afterwards died "and whatever injuries he received in the accident only hastened his death and were not the cause of the same, the plaintiffs," his minor children, "are not entitled to recover" in their suit for the negligent killing of their father; "and this is true without regard to whether or not the defendant was negligent at the time of the accident," is erroneous.

2. ———: **Release of Cause of Action: Consideration: Going to Another.** A release of the cause of action for damages of a party negligently injured by another, if not signed by him by inadvertence, but was understood, and if not obtained by fraud or mistake, and if not without consideration, whether the consideration was paid to him or not, is a bar to his action. If a loss or disadvantage accrues to him for whom the release is made, although without benefit to the maker, the consideration is sufficient to support the release.

3. ———: ———: **Death of Injured Party: Transmitted Cause to Wife or Children.** The cause of action which is transmitted by the statute to the widow or children of the injured party is the right to recover for his death, when there has been no settlement or adjucation for his injuries in his lifetime.

4. ———: ———: **Release by Injured Party: Death: Right of Widow or Minors to Sue.** The fact that the injured party gave a release to the railroad company which had negligently injured him bars the right of his widow or minor children, after his death as the result of such injuries, to sue to recover for the pecuniary interest in his life which the statute gives them. If he could not have maintained an action to recover for his injuries, they can not after his death, because of the right

conferred by the statute, maintain an action for the pecuniary interest which they lost by the death of the husband or father, whether his cause of action was settled and adjusted by agreement or was adjudicated in court, and whether the action was brought under the second or third section of the Damage Act.

Appeal from St. Charles Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED (*with directions*).

*Boyle & Priest* and *Edward T. Miller* for appellant.

The following authorities hold that a release given by the injured party bars an action for damages arising out of the death, whether brought by the personal representative or for the surviving husband or wife, or for the benefit of next of kin: Rice v. Railroad, 33 S. C. 556; Hecht v. Railroad, 132 Ind. 507; Diddle v. Railroad, 25 Barb. 183; Littlewood v. N. Y., 89 N. Y. 24; Re Taylor Estate, 179 Pa. 254; Walkerton v. Erdman, 23 Can. S. C. 352; Fowlkes v. Railroad, 9 Heisk. (Tenn.) 829; Holton v. Daly, 106 Ill. 131; Hill v. Railroad, 178 Pa. St. 223; Birch v. Railroad, 30 Atl. 826; Safford v. Drew, 3 Duer 672; Monroe v. D. & R. Co., 84 Cal. 515; Goodsell v. Railroad, 33 Conn. 52; State v. Railroad, 60 Me. 490; Senior v. Ward, 102 E. C. L. 392; Griffiths v. Earl of Dudley, 9 Q. B. Div. 357; Cooley, Torts, 263, 264; 2 Redf. on Railroads (4 Ed.), 250; Pierce on Railroads, 392; Pat. Ry. Ac. Law, 410, 508; 1 Shear. & Redf. Neg. (5 Ed.), sec. 140; Tel. Co. v. Cassin, 111 Ga. 575; Tiffany, Death by Wrongful Act, sec. 124.

*Gerald Griffin* and *A. R. Taylor* for respondent.

Dill might have had an action of his own, if he had lived — and this right of action he could control — but can he, by any act of his, destroy the cause of action

which the statute says shall belong to his widow or minor children after his death? The Proctor case, 64 Mo. 126, only decides that the action is a transmitted action, and that, as the servant injured by the negligence of his fellow-servant never had a cause of action, therefore, there was none to transmit; but here there was a cause of action, and, by force of the staute, it is transmitted upon the death of the party injured, and it never does become a right until after the death of the party injured. The injured party could not sue for his own death as long as he lived. After his death, the statute declares who shall sue and recover, so that we submit that, the remedy for the death of a party, injured by the negligence of a public conveyance like a street car, being given by the statute to the widow or minor children, the injured party has no power, by any act of his, to release or in any manner affect the right so given, and the release given by the deceased in this case cannot affect in any way the right of action bestowed by the statute on the minor children.

GRAVES, J.—The facts of this controversy are so fairly stated by VALLIANT, J., in the opinion filed in Division One, 87 S. W. 976, that we adopt the same, which is as follows:

"Plaintiffs are the minor children of John D. Dill deceased suing by their curator to recover damages for the death of their father which they allege was caused by the negligence of defendant.

"The petition alleges negligence as at common law and also a violation of the vigilant watch ordinance.

"The answer was a general denial, contributory negligence on the part of the deceased, and a release by the deceased.

"The plaintiff's evidence tended to prove as follows:

"John D. Dill, the father of plaintiffs, was the driver of a wagon of the Walton-Knost Express Com-

pany.   Defendant operated a double-track street rail-
road in Laclede avenue.   On the night of the accident,
December 14, 1899, Dill was driving a wagon in de-
fendant's south track between Sarah street and Van-
deventer avenue going east; a street car of defendant
going in the same direction in the same track approach-
ed the wagon from the rear, running at the usual speed,
about eight miles an hour; when the car was at a dis-
tance of 75 or 100 feet from the wagon the motorman
commenced sounding his gong and continued doing so
as he continued to come forward until the car struck
the rear end of the wagon and turned it over, throw-
ing the driver to the street; the wagon was struck with
such force that it was badly broken; the car struck the
wagon just as the driver began to turn to get out of
the track; it was down grade going east; the street was
not well lighted at that point, but a wagon in front of
the car could have been seen by the motorman for a
distance of 500 feet or more; the car could have been
stopped within a space of 40 to 50 feet and by use of
the reverse within a shorter space. There was no effort
to stop this car until it struck the wagon.  The driver
of the wagon did not seem at the time to have been
seriously hurt.  He continued his usual occupation for
ten or twelve days when he gave up his work and
went home, after which he rapidly declined in health,
and died February 6, 1900, fifty-four days from the
date of the accident.  The death certificate was that it
resulted from 'heart trouble attributing traumatic in-
jury,' and his attending physician testified that the dis-
ease was attributable to the accident.

"On the part of defendant the evidence tended to
show as follows:

"The point of the accident was 300 to 400 feet east
of Sarah street; there was a street light at Sarah street
and one at Vandeventer avenue, the distance between
the two being 1200 or 1400 feet, there was no light be-
tween them.  A policeman arrived on the scene a few

minutes after the accident and proposed to take Dill to the hospital, but he declined, saying he was not hurt, and stood around there until another wagon came and assisted in transferring the contents of his wagon to the other. There was also expert testimony tending to show that the disease of which Dill died could not have been caused by the hurt received in the accident.

"A few days after the accident and while Dill was still at work for the express company, a claim agent of the defendant called at the office of the express company and offered to settle the claim for $37.50, the estimate of the damage to the wagon which the express company was willing to accept, but the defendant's representative said he would not settle with the express company unless Dill would also join in the settlement, so that it would be a release of the claims of both Dill and the express company. Dill was called into the office and informed of the proposition. Mr. Walton, the president of the express company said to Dill, 'You haven't lost anything by this accident have you?' Dill replied, 'No.' But when Mr. Walton read the release which it was proposed they were to sign and saw that it purported to discharge the railroad company from liability to Dill, he asked if he was hurt, and Dill said his back was hurt. Walton then said if that was the case he (Walton) would not sign it, and explained to Dill that if he should sign it he could not recover for his injury of the railroad company, but Dill said he would sign it and did so, and the money, $37.50, was paid to the express company, no part of which went to Dill.

"The case was given to the jury on instructions the correctness of but one of which is questioned and that one we will presently consider.

"There was a verdict for the defendant, the court sustained the plaintiff's motion for a new trial on the ground that it was error to have given the instructions referred to. Defendant appeals."

I. The instruction criticised and referred to above as well as in the motion for new trial, which was sustained by the trial court, is in this language:

"If the jury believe from the evidence that at the time of the accident detailed in the evidence, John Dill was suffering from phthisis pulmonalis, or consumption, and that he died from such disease, and that whatever injuries he received in said accident only hastened his death and were not the cause of the same, the plaintiff is not entitled to recover, and your verdict must be for the defendant; and that this is true without regard to whether or not the defendant was negligent at the time of said accident."

This instruction was clearly wrong and should not have been given; a similar instruction has been expressly disapproved by this court. [Fetter v. Fidelity & Casualty Co., 174 Mo. 256.] In granting a new trial upon this point the trial court was right and were it not for other propositions its judgment should be affirmed.

II. The defendant pleaded and proved a written release, signed and given by deceased, John Dill, in his lifetime. This release was in the following words:

"For and in the consideration of the sum of $37.50 to us in hand paid by the St. Louis Transit Company, the receipt of which are hereby acknowledged, we and each of the undersigned, John Dill and the Walton-Knost Express Company, hereby fully and forever release, acquit and discharge the said St. Louis Transit Company, the Forest Park, Laclede and Fourth Street Company and the latter's successors and assigns from any and all claims and causes of action which we, or either of us may now, or hereafter have against the said St. Louis Transit Company, the said Forest Park, Laclede and Fourth Street Railway Company and the latters successors and assigns or any of these, on account of any and all injuries, damages and losses by us, or either of us sustained, though a collision between a

wagon, driven by the said John Dill and owned by the said Walton-Knost Express Company, and an eastbound electric car of the said companies on Laclede avenue, at or east of its intersection with Sarah street, in the city of St. Louis, Missouri, on or about the fourthteenth day of December, 1899.

"Witness our hands this fourth day of January, 1900.                              "JOHN D. DILL.
"WALTON-KNOST EXPRESS COMPANY.
"Witness: S. A. Jenkins." By F. Walton, Vice-president.

The evidence fails to disclose that this release was either without consideration, or that it was signed by inadvertance, fraud or mistake as pleaded in the reply. On the other hand, the evidence, which is undisputed, clearly shows that the defendant company, through its agent, refused to pay the $37.50 unless the deceased, Dill, would sign the release, and that the same was read by him and fully discussed in his presence by both the agent and his employer. The evidence further showed that although he was claiming some injury to the back, he signed the release, even after his employer had advised him that he would thereby lose his right of action against the defendant, and after his employer had first refused to sign it for that reason.

It is true that the $37.50 went to the Walton-Knost Express Company and not to Dill, and it is equally true that this money would not have been paid without the signature of Dill to the release, all of which was fully understood and agreed to by deceased. The payment of the money under these circumstances was a sufficient consideration for Dill's contract of release, although he did not receive a penny. In the case of Greene v. Higham, 161 Mo. l. c. 337, GANTT, J., in speaking of the sufficiency of a consideration, says: "These motives for the written contract constituted a valuable consideration which has been comprehensively defined to be 'a benefit to the party promising, or to a third per-

son at his request, or an inconvenience, loss, or injury, or the risk of it to the party promised.' '' It is further said in the same case that "the amount of the consideration, so it be appreciable, is immaterial."

The consideration for a contract has been further defined, as follows: "A valuable consideration consists either in some right, interest, profit or benefit accruing to the party who makes the promise, or some forbearance, detriment, loss, responsibility, act, labor, or service, given, suffered, or undertaken by the party to whom it is made." [6 Am. and Eng. Ency. Law (2 Ed.), 703.] At page 689 of the same volume this definition of consideration is given: "If the promisee do any act to his injury, however slight, at the request of the promisor, either express or implied, the detriment so sustained operates as a consideration." In 1 Parsons on Contracts (4 Ed.), p. 357, the sufficiency of a consideration is stated in the following language: "If a benefit accrues to him who makes a promise, or if any loss or disadvantage accrues to him to whom it is made, although without benefit to the promisor, in either case the consideration is sufficient to support assumpsit."

So that it is apparent, under this evidence, that there was a sufficient consideration for this release. There was no evidence of fraud, inadvertance or mistake, and this release finally determines this case against the plaintiff unless the same is not binding upon the plaintiff for other reasons to be noticed hereinafter.

III. Plaintiff contends that, notwithstanding the fact that deceased made the release introduced in evidence, for a valuable consideration, and without fraud, inadvertance or mistake, yet there should be a recovery.

In other words, the contention is made that our statutes create two separate and independent causes of action, one in the deceased, and another and different one in the widow and minor children, the latter of

which cannot be compromised, settled or adjusted by the deceased in his lifetime, and this is the only seriously contested point in the case here, although the trial court tried the cause upon the erroneous theory that, if no consideration, in dollars and cents, passed directly to deceased, there could be no valid release. This we gather from the character of the instructions given and refused. The question first above mentioned is earnestly and ably presented by counsel, and even more fully presented by Judge VALLIANT, in the divisional opinion, which for thought and research cannot be said to be in any wise wanting.

We then confront, in direct and unmistakable terms, the question as to whether or not, where a person is injured through the negligence or default of another, and before death, makes a settlement with the wrongdoer, can his widow or children yet maintain an action for the death and accrued damage, if any, by reason thereof. This question, we feel constrained, under the authorities and our statutes, to answer in the negative. Such answer is right in principle and in our judgment right under a fair and reasonable construction of the statutes. Our statutes never contemplated that there should be two such independent and distinct causes of action in cases of death resulting from a wrongful act, as would authorize a recovery by the injured party in his lifetime, and afterwards another and further recovery by the widow and children in case of his death. Yet this is the force and effect of plaintiff's contention. If one injured by the negligence of another, can, before death, settle with the tortfeasor, and yet leave a cause of action against the tortfeasor in favor of his wife and children, he can bring suit, recover judgment and receive payment of the judgment, and yet leave this cause of action, if death was in any way a result of the alleged tort. In other words, the alleged negligence might have reduced him to a condition nigh unto death, but with sufficient time before death to sue

for and collect damages for his bodily ailments, and he thereafter die, and still leave in full force an action for damages for injuries growing out of the same negligent act, to be enforced by his wife or children, as the case may be. To this proposition we have been unable to give our assent. Whether the cause of action given to the widow or children be denominated a transmitted right, a survival right, or an independent cause of action, it yet remains true that the foundation and gist of each and all is the negligent act which produced the injury. The negligent act was the basis, at common law, for the cause of action in the husband, and it is likewise the gist and basis of the cause of action in favor of the widow or children, or of the administrator as in some States provided.

Our own court, however other courts have decided, look upon the right of the widow and children as a transmitted right and not strictly an independent right of action.

This court, in case of Proctor v. Railroad, 64 Mo. l. c. 120, in discussing the several sections of our damage act, says:

"It creates no new cause of action, but simply continues or transmits the right to sue, which the party whose death is occasioned would have had, had he lived. It is not only a right transmitted, but it is restricted by limitations as to the persons who are to enjoy the right, the time within which it is to be enjoyed, and the amount of damages to be recovered. Section 4 provides that all damages accruing under section 3 shall be recovered by the same parties and in the same manner as is provided in section 2, and in every such action the jury may give damages not exceeding five thousand dollars. This section, in connection with section 2, designates the parties to whom this right is transmitted, and also the time within which it is to be exercised."

In White v. Maxey, 64 Mo. l. c. 558, it is said:

197 Sup.—40

"Neither of these sections created any new cause of action, but provided for a survival of a cause of action which existed at the common law, where the death of the party injured occurred, to certain representatives of the deceased party, and limited the amount of the recovery to a specific sum."

In another case, that of Gray v. McDonald, 104 Mo. 311, this court said: "This section, like the preceding one, does not, as is often supposed, create a new cause of action; it transmits to designated persons a cause of action that the injured party would have had, had death not ensued. In other words, the cause of action does not abate by reason of the death of the person injured."

Further, in a later case, that of Miller v. Railroad, 109 Mo. l. c. 360, it is said: "The Proctor case . . . proceeds on the principle that the second and third sections were not intended to create an entirely new liability, but were designed to continue or transmit the right to sue, which the injured party would have had, had he lived."

Yet later, in the case of Hennessy v. Brewing Co., 145 Mo. l. c. 112, this court said: "In cases like this, under the statute, the father and mother do not recover the value of services rendered by their child, as the father or stepfather does, as a corollary to the obligation to support in cases arising *ex contractu* or in assumpsit, but they recover, in tort, on the right which the child would have had if he had survived the injury, and which right died with the injured party at common law, but has been by our statute expressly *transmitted* to them, *eo nomine*. . . . It is solely a preserved, transmitted right."

From the above it clearly appears that our court recognizes the right of action involved in the case at bar as purely a transmitted right of action. That is to say, the right of action which first existed in deceased, but which, under the terms of the common law, would have died with the deceased, but for these stat-

utes which have preserved and transmitted the same.
Our court has not looked upon it as a separate and dis-
tinct cause of action.   Being a right of action which
first existed in the deceased, it necessarily follows that
this right of action could be terminated by the deceased
in his lifetime either by an adjustment and settlement
thereof or by an adjudication in the courts.   In either
of which cases, at the death of the deceased, whether a
settlement of the right of action was made by an adjust-
ment out of court or by adjudication in court, there
would be no right of action to be  transmitted.    And
such adjustment or adjudication would be a bar to any
subsequent action.

The Supreme Court of Indiana, in an opinion by
OLDS, J., in the case of Hecht v. Railroad, 132 Ind. 507,
in discussing the proposition involved in the case at
bar, under statutes very similar to those of this State,
uses the following language:

''The clear intention of the Legislature, as express-
ed by these sections, is in effect that when the injury
to the person causes the death of such person the ac-
tion shall survive in favor of the person in whose favor
an action is given for the injury causing the death.   An
action for a cause of action liquidated and satisfied can-
not survive in favor of any person.   Section 284, supra,
provides in terms that the action may be maintained by
the personal representatives of the deceased for the
wrongful act or omission of another if the deceased
might have maintained an action, had he lived, for such
wrongful act or omission.   That is to say, if the de-
ceased, at the time of his death, might have maintained
such action, but the  deceased  having  prosecuted  to
final judgment an action for such wrongful act or omis-
sion, and the judgment having been paid and received
by him, he at the time of his death could not have main-
tained an action for such wrongful act or omission, as
the right of action in his favor had merged into the
judgment which was satisfied, hence no action exists in

favor of the personal representatives of the deceased by virtue of the latter section. The position we have stated we think well supported by authority. In an action by the deceased in his lifetime, he is entitled to recover full compensation for the injuries sustained, including injuries for disease superinduced by reason of the injuries.

"In the case of Railroad v. Hecht, 115 Ind. 443, this court says: 'Where a disease caused by the injury supervenes, as well as where the disease exists at the time of the injury, and is aggravated by it, the plaintiff is entitled to full compensatory damages.' See authorities cited in this decision. In such an action the injured party is entitled to recover full compensation for all the injuries which were the natural consequence of the wrongful act.

"It was certainly not the intention of the Legislature that where the person guilty of the wrong has been once subjected to a suit by the injured party in his lifetime, and compelled to pay all the damages resulting from the injuries sustained by the wrongful act, he should again be liable to an action in favor of the personal representatives of the injured party after his death, and be again compelled to respond in damages for the same act.

"It is suggested by the counsel for the appellant that the answers are not good, for the reason that the parties are not the same; that the judgment was on a different cause of action, and that different facts will be presented in this action, and different evidence be required to sustain them. But we do not think these objections well taken. The parties are the same except that the injured party, who has died, is represented by his personal representatives. It is true that the statute provides that the proceeds shall go to his widow or children, or next of kin, but the administrator 'stands in the shoes' of the deceased. The cause of action is the same. If the administrator recovers he must do so

by reason of the same wrongful act on the part of the appellee company that enabled the intestate to recover. It is suggested that the measure of damages is not the same, that the intestate might have recovered for suffering, loss of time, medical attendance, etc.; that the right to recover for these things died with him, and that by the statute a new cause of action is given for new injuries to other persons. By the survival of the action the right of recovery and measure of damages must necessarily be different but the gist of the action, the principal and paramount right of recovery, is on account of the destruction of the capacity and power of the intestate to earn money and accumulate wealth for his own support and benefit, and the support and benefit of his family or next of kin.

"The central and paramount thing or item for which damages may be recovered is the same whether the recovery be by the intestate in his lifetime or by his personal representative after his death. In minor particulars the measure of damages differs, but this does not warrant such a construction of the statutes as contended for by counsel for appellant.

"It is further urged that the former judgment is not a bar for the reason that different facts are here presented and different evidence is required to sustain the suit. While it may be true that some items of evidence may be competent or even necessary in one case, that are not in another, and the method of proof may differ, yet it remains a fact that the action in either case is based on the negligence of the appellee causing the same and identical injury to the appellant's intestate, and the damages sustained in either case grow out of the injury to the intestate caused by the negligence of the appellee. It is contended that the section of the statute, section 284, supra, gives a new right of action in favor of the administrator for the benefit of the widow and children, if any, or the next of kin. This is true in a certain sense. Without the statute the ac-

tion could not be maintained, but in order that it may be maintained the intestate must have had a right of action against the person whose wrongful act or omission caused the injury which he could have maintained had he lived, and when, as in this case, the injured party has prosecuted an action for damages on account of the injury to final judgment, and the judgment has been satisfied prior to his death, he, if he had lived, could not have prosecuted an action against the person causing the injury for the same act or omission.''

We have burdened this opinion with this lengthy quotation from the Hecht case for the reason that it clearly expresses our ideas as to the construction which should be given to our statutes. It is true that in the Hecht case the transmitted or survival right is vested in an administrator, but inasmuch as recovery must be for the benefit of the widow and children there is no substantial difference. Our statutes give them a direct right to sue, the Indiana statutes an indirect right through an administrator. In such cases the administrator is a trustee of an express trust. [Safford v. Drew, 3 Duer 627.]

In discussing Lord Campbell's Act, from which our statutes are borrowed, Judge Cooley says: ''It is seen, on a perusal of this statute, that it gives an action only when the deceased himself, if the injury had not resulted in his death, might have maintained one. In other words, it continues for the benefit of the wife, husband, etc., a right of action which, at the common law, would have terminated at the death, and enlarges its scope to embrace the injury resulting from the death. If, therefore, the party injured had compromised for the injury, and accepted satisfaction previous to the death, there could have been no further right of action, and consequently no suit under the statute.'' [Cooley on Torts (2 Ed.), p. 309.]

And such has been the construction placed on Lord Campbell's Act by the courts of England. [Read

v. Railroad, L. R. 3 Q. B. 555; Griffiths v. Earl of Dudley, L. R. 9 Q. B. Div. 357.]

In fact no English case, which we have found, gives to this statute other or different construction.

In Pierce on Railroads, p. 392, the doctrine is thus announced: "Some authorities treat the statute as merely keeping alive a right of action, while others treat it as giving a new cause of action. But whether the statute gives a new cause of action or not, it should be interpreted as intended to give one only when the company would be liable at common law in the event of an injury not fatal in its results. . . . . An action cannot be maintained under the statute for an injury for which the deceased received satisfaction in his lifetime. It is not to be presumed that the statute contemplated a double payment and satisfaction."

Shearman & Redfield, on the Law of Negligence (5 Ed.), 1, sec. 140, expresses the doctrine thus: "Where the right of action is given only by a survival statute (that is, containing the right of the injured person, after his death), it is too plain for argument that a release from the deceased in his lifetime is a bar to any action. But, furthermore, it has been held, under the broader statutes, that the foundation of every action of this kind is in the injury which caused the death, and not merely in the fact of death itself; and, therefore, that if an injured person recovers damages for that injury during his lifetime, or releases his claim, or (under peculiar English statutes) if he had contracted with his employer that the benefit of the statute should not be claimed, his representatives cannot maintain any action upon his subsequent death, resulting from the injury."

In 8 Am. and Eng. Ency. Law ( 2 Ed.), 870, we find the following language: "When the right of action given by the statute is merely such as the deceased would have had if he had survived the injury, a release properly executed by him in his lifetime is a complete

defense to an action by his personal representative or others to recover damages for his death.   The same rule is true where the statute is not a survival statute, but creates a new and distinct cause of action in favor of certain beneficiaries, if it provides that the right of action shall exist only in cases where the deceased himself might have maintained the action had he lived.''

Whether the right of action is a transmitted right or an original right; whether it be created by a survival statute or by a statute creating an independent right, the general concensus of opinion seems to be that the gist and foundation of the right in all cases is the wrongful act, and that for such wrongful act but one recovery should be had, and that if the deceased had received satisfaction in his lifetime, either by settlement and adjustment or by adjudication in the courts, no further right of action existed.   There are, however, a few cases to the contrary.   Further excerpts from the decided cases and text-writers would burden this opinion to no good purpose, and suffice it to say that in addition to those cited above, the following cases uphold the doctrine in this opinion announced: Legg v. Britton (Vt.), 24 Atl. 1016; Needham v. Railroad, 38 Vt. 294; Price v. Railroad (S. C.), 12 S. E. 413; Littlewood v. City of N. Y., 89 N. Y. 24; In Re Taylor's Estate, 179 Pa. 254; Hill v. Railroad, 178 Pa. 223; Birch v. Railroad (Penn.), 30 Atl. 826; Munro v. Dredging Co., 84 Cal. 515; Goodsell v. Railroad, 33 Conn. 52; Fowlkes v. Railroad, 9 Heisk. (Tenn.) 829; Holton v. Daly, 106 Ill. 131; So. Bell Tel. Co. v. Cassin, 111 Ga. 575 (majority opinion); Railroad v. Farrow, 6 Colo. 498.

Under the holdings in this State, it matters not whether the cause of action is under the 2nd or 3rd section of the Damage Act, there must have been a right of action in the deceased, had he lived, before there exists a right of action in the widow or children.   The statutes of the different States have in a way affected the holdings of the courts, but Massachusetts and Ken-

tucky are the only States where we find anything which militates against the conclusion reached herein.

We therefore conclude, whether the action is under the 2nd or 3rd section of the Damage Act, a settlement and adjustment or an adjudication in court, by deceased during his lifetime, is a bar to any action by the widow or children, and in this case the release in evidence is a complete bar to this action, and it follows that notwithstanding the conceded error of the trial court hereinbefore pointed out, the verdict was for the right party, and the trial court erred in setting the same aside. The judgment of the lower court is reversed and the cause remanded with instructions to enter judgment for defendant upon the verdict of the jury herein. All concur.