JUANITA JACKSON v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY,
a Corporation, Appellant.—No. 40577.—211 S. W. (2d) 931.

Division Two, May 27, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, June 14, 1948.

*M. G. Roberts, Frank C. Mann, C. W. Walter* and *Mann & Mann* for appellant.

*Gardner & Gardner* for respondent.

[932] BARRETT, C.—Jesse Jackson was killed on the 1st day of March 1947 when the car he was driving was struck by a passenger train at the Hutchinson Street crossing west of the City of Springfield. His wife, Juanita Jackson, "prosecutes this action for, and on behalf of herself and (their five) minor children" under both the penal and the compensatory sections of the wrongful death statute. Mo. R. S. A., Secs. 3652, 3653, 3654. The suit is in two counts, the first of which was submitted upon the allegation of negligent failure to sound the whistle and ring the bell and the second of which was submitted upon the negligent failure to maintain a flagman or watchman at a hazardous crossing. The prayer of the first count was for $10,000 and the prayer of the second count was for $15,000. The jury were instructed, if they found for the plaintiff on the first count, to "assess a penalty against defendant of not less than Two Thousand Dollars ($2,000.00) and not more than Ten Thousand Dollars ($10,000.00), in your discretion." They were instructed, if they found for the plaintiff on the second count, to "award her such sum, not exceeding Fifteen Thousand Dollars ($15,000.00), as you find from the evidence will fairly and justly compensate her for all pecuniary loss, if any, you may find from the evidence she has sustained or will sustain as a necessary result of the death of her husband, Jesse Jackson." In addition they were instructed that "You are at liberty to return a verdict in favor of the defendant on either or both counts of the petition. You are also at liberty to return a verdict for the plaintiff on either or both counts of the petition." Separate forms of verdicts for the two counts were given the jury, and the jury returned separate verdicts of $5,000 on the first count and $10,000 on the second count. The preliminary and essentially meritorious question upon this appeal by the railroad is [933] whether the plaintiff may recover under both the penal and the compensatory sections of the wrongful death statute.

One method of approaching and developing the question is to analyze the contrasting positions of the parties. It may be said in the beginning, as the analysis will reveal, that none of the arguments or cases relied upon are conclusive one way or the other. But the analysis does produce certain compelling implications and distinctions which lead to certain conclusions and bear upon the solution of the problem.

One of the principal arguments of the railroad is that Jackson's death "gave rise to but one cause of action for which there can be but one recovery." On the other hand the plaintiff argues that the general assembly, in enacting the compensatory section which "embraces wrongful death from any cause" and in addition in enacting the penalty section which was for the purpose of deterring and penalizing negligent death by certain persons, intended to and did create two separate and distinct causes of action. It is our conclusion that neither of these categorical statements are absolute truths, under the statute, when applied to the question presented by this cause. And yet in some senses they are both true, and it is in the distinctions and differences that significant implications are to be found. It may be admitted, at the outset, as the plaintiff says, that in neither the penalty nor the compensatory section, or elsewhere in the statute for that matter, is there an express prohibition against recovery under both sections or a statement that recovery may be had under one section only. On the other hand, as the railroad says, there is no express authorization in the statute for recovery under both sections. Consequently, it can only be said that the statute is silent on the subject

At the outset, in connection with its argument that there is but a single cause of action, the railroad says that in Section 3652 we have enacted the penal provision of Lord Campbell's Act and in Sections 3653 and 3654 we have enacted the compensatory provisions of that act. But, in Lord Campbell's Act there is no provision whatever for a penalty, certainly not one in any wise comparable to the penalty of Section 3652. On the other hand, Lord Campbell's Act contains this provision (not found in our statute): "Provided, always, . . . that not more than one action shall lie for and in respect of the same subject-matter of complaint; . . . " 9 & 10 Vict. c. 93, Sec. 3 (1846). So the plaintiff, in arguing that there are two causes of action under our statute, says, since there is no penalty in Lord Campbell's Act, that the legislature in including a penalty in our adaptation of the English act and in omitting the limitation to one action plainly indicated that there were to be two separate and distinct causes of action.

It would unduly prolong this opinion to review in detail the English courts' interpretation of Lord Campbell's Act. Not only is there no penalty provision in that act but in addition the emphasis, so far as the sums recoverable are concerned, is entirely and emphatically upon compensation and pecuniary loss, particularly pecuniary loss to the plaintiffs. Under the limitation of one action in Section 3 the English courts have been faced with the same questions and problems we have had without the limiting section and for the most part have solved them in the same manner. Merely to illustrate: "Only one action lies in respect of the same subject-matter of com-

plaint under the Acts, and accordingly, if the deceased before death recovered compensation in an action for the injury which eventually caused his death, no further action can be brought.'' 23 Halsbury's Laws of England, Sec. 981, p. 694; Read v. Great Eastern Railway Co. (1869) L. R. 3 Q. B. 555. Without that limiting section of the statute our court so held in Strode v. St. Louis Tr. Co., 197 Mo. 616, 95 S. W. 851. For other illustrations see Jackson v. Watson, (1909) L. R. 2 K. B. 193 and 23 Halsbury's Laws of England, pp. 694-695. In brief, in 1855 (1 R. S. Mo. 1855, p. 647), we adopted the principle of Lord Campbell's Act but not its terminology—ours is in fact an adaptation, and the English act and its interpretation has but little force [934] in the interpretation of our statute, and least of all in the respect under consideration. Particularly in this respect, except for Colorado and New Mexico (who copied the Missouri statute) our wrongful death act is unique, and but little, if any, aid is to be had from any source other than our own statute and cases interpreting it. See the analytical comparison of all the statutes in Tiffany, Death By Wrongful Act, pp. XX-IXXI.

Admittedly no case has ever held that a recovery could not be had under both the penal and compensatory sections of the statute but neither has there ever been a case holding that there could be such a recovery. As we have said, these two opposing views, that there is but a single cause of action and that there are two separate and distinct actions between which an election cannot be compelled, are true in a limited sense only and it is in the differences and distinctions rather than in these unqualified, categorical statements that some compelling, persuasive implications are to be found.

Sixteen years after the enactment of the statute, in Brownell v. Pacific R. R. Co., 47 Mo. 239 (1871), a widow brought and submitted her action under separate counts under both the penal and the compensatory sections of the act, but, unlike in the present case, the jury returned but a single verdict of $4,500. It should be carefully noted that the question raised and presented by the appellant railroad was that there should have been a special verdict, rather than a general verdict, showing upon which count the jury returned its verdict. It was, as the court said, conceded that there could be a cause of action under the second section of the act and a different cause of action under the third section of the act. The precise question to be decided and the one the court did decide was whether the general verdict was proper in the circumstances, and the court held that it was. In deciding the question the court did say that the answer to the question depended upon the answer to a second question,—that is whether ''the two counts in the petition embrace each a separate and distinct cause of action.'' Of this secondary question the court said: ''To constitute two causes of action there must be two subjects of complaint. But in the present case there is but one injury, one

subject-matter of complaint—the killing of the plaintiff's husband. There being but one cause of action, there could be only one assessment of damages. . . . There is but one cause of action stated in the petition, and that is the killing, although it is stated in different ways to meet the evidence, which may show that it occurred either in the manner mentioned in one section or the other."

The decision neither calls for nor permits the announcement of any unqualified rules under the wrongful death act except the one that the general verdict of $4,500 could not be complained of there being, it was assumed or tacitly conceded, evidence of negligence under both counts. However the opinion does contain certain important but limited implications applicable to this case. In one sense there is but one cause of action, "one injury, one subject-matter of complaint" and that is "the killing of the plaintiff's husband." This sense plainly indicates that there can be but one recovery. In another sense, depending on how the death was occasioned, there are two causes of action but not necessarily two injuries or two recoveries, although two recoveries are negatived only by the fact that there is but one subject matter of complaint, the death. These phases of the Brownell case are emphasized in Jordan v. St. Louis Transit Co., 202 Mo. 418, 101 S. W. 11. There the widow brought an action in one count under both sections of the act. The defendant waived the defect in pleading and the plaintiff abandoned one of the charges but the court nevertheless so erroneously instructed the jury that the abandoned, unproved charge of negligence was made an issue in the case. But of the Brownell case, the court said, l. c. 427: "What the court meant by that language was that there was really but one wrong for which the plaintiff was seeking redress, that was the death of her husband. Measured by the rules of pleading there were in that case, as in this, two causes of action, but as they were both founded on the same *injuria* [935] there could be but one recovery, and in that sense there was but one cause of action." In the first sense again, the subject matter of the suit or injury complained of by the decedent's survivors or representatives, there is but a single cause of action— the death, and the implication is that for that injury there can be but one recovery. In the second sense, of pleading, there are two causes of action, one under the penal section and the other under the compensatory section. In the present case both of these elements or senses are only indirectly involved—that is as they bear indirectly on the question presented.

There is one other sentence in the Brownell case, omitted from the quotation, which we think points directly to the precise question involved upon this appeal and differentiates it from any of the cases relied upon. It is this: "The law declares that if the injury is caused under the circumstances mentioned in one section, *the damages* shall be for a fixed amount; and if under the circumstances men-

tioned in another section, *the damages* shall not exceed a certain amount." In short the ultimate question in this case is the sum or damages recoverable and whether there is but a single cause of action or two separate and distinct causes of action is important, with respect to this issue, only in so far as it may bear upon and induce a conclusion of this problem. Some further examination of the cases relied upon may emphasize the differences and precisely point out the problem even if it does not completely solve it.

In Strode v. St. Louis Transit Co., 197 Mo. 616, 95 S. W. 851, the deceased was injured and before his death settled with the defendant, signing a general release of any and all causes of action. Upon his death his surviving minor children instituted an action for his wrongful death. The precise question for decision was "whether or not, where a person is injured through the negligence or default of another, and before death, makes a settlement with the wrongdoer, can his widow or children yet maintain an action for the death and accrued damage, . . . by reason thereof." The court said that our statute did not contemplate two independent causes of action, one in the deceased and another in his survivors. In deciding the question the court said: "Whether the cause of action given to the widow or children be denominated a transmitted right, a survival right, or an independent cause of action, it yet remains true that *the foundation and gist of each and all is the negligent act which produced the injury.*" Upon the question for decision the case states the general rule. Annotation 39 A. L. R. 579. And yet it must again be noted that the implication of but one recovery is sound in a limited sense only. The Strode case was under the compensatory section of the statute. When the statute confers a right of action for wrongful death upon designated beneficiaries and is penal or punitive in character it is questionable whether the deceased could affect that cause of action and the case may therefore furnish an imperfect analogy. Annotation 39 A. L. R., l. c. 591; Denver & R. G. R. Co. v. Frederic, 57 Colo. 90, 140 Pac. 463.

In State ex rel. Thomas v. Daues, 314 Mo. 13, 283 S. W. 51, a husband sued for his wife's death. When the engineer was called to testify it was objected that he was not a competent witness, the plaintiff's wife being dead, because he was a party to the action within the meaning of Mo. R. S. A., Sec. 1887. "The question in hand now is, whether or not the cause of action which the husband brought for the negligent killing of the wife is the same cause of action which the wife had for her negligent injury, the moment before her death." In resolving the question the court complained that the Strode case had been misinterpreted and "wrongly cited." The court said that in the Strode case it had steered clear of giving the cause of action under the death statute "any particular name." The court said: "We labored long to dodge this discussion in Strode's

case, . . . ." The court's conclusion was that the engineer was not disqualified as a witness because "The only parties that are, or could be to this suit is plaintiff Thomas, himself, and the railroad company. . . . Such is the 'cause of action in issue and on trial.'" The action here was under the penal section of the act and while in some respects there [936] may be different acts of negligence and different damages sustained by various parties nevertheless there is a plain implication from the case of but a single satisfaction or one recovery.

In conclusion, in connection with the implications from the cases, it is true, as the respondent says, that the compensatory section "is broad enough to cover every conceivable kind of either negligent or intentional wrongful death." Cooper v. Kansas City Pub. Serv. Co., 356 Mo. 482, 202 S. W. (2d) 42, 45. But this does not mean that the legislature, by enacting the penal section, necessarily evinced an intention that there could be a separate and additional recovery for this different field not covered by the compensatory section. Neither is such an intention manifest from the fact that the legislature may have intended to penalize and thereby deter negligent deaths by certain persons. It is true that the sum recoverable under the penal section has been held to be a penalty. Grier v. K. C., C. C. & St. J. Ry. Co., 286 Mo. 523, 228 S. W. 454. On the other hand it has also been held that the penalty section permits an award for pecuniary loss as well as for penalty, even though the whole award is treated as penalty. State ex rel. Dunham v. Ellison, 278 Mo. 649, 213 S. W. 459; Leaman v. Campbell, 66 Express Truck Lines, 355 Mo. 939, 199 S. W. (2d) 359, 364. No doubt the section was intended to deter negligent deaths but in addition it is just as reasonable to suppose that it was also enacted to cover instances in which there was not and could not be any pecuniary loss. For example, in Wallace v. Woods, 340 Mo. 452, 102 S. W. (2d) 91, an administrator recovered for the death of a bachelor who left no dependents or anyone who could show a pecuniary loss from his death. The legislature intended to penalize but "nevertheless, under both compensatory and penalty statutes, the purpose of providing compensation for those dependent upon persons killed by wrongful acts is at least one of the primary purposes of the act." Cummins v. Kansas City Pub. Serv. Co., 334 Mo. 672, 682, 66 S. W. (2d) 920, 924. In the sense that there are two causes of action it has always been permissible to proceed in separate counts under both sections but there has always been an election and a choice of the measure of damages before final submission. Borrson v. M.-K.-T. R. Co., (Mo.) 161 S. W. (2d) 227, 229; Borrson v. M.-K.-T. R. Co., 351 Mo. 214, 172 S. W. (2d) 826.

In addition to the implications we have found in the cases they also plainly indicate, as we suggested in discussing the Brownell case, that the essential problems of the instant case is the damages

recoverable rather than the "cause" or "causes of action" as the parties have argued. In general, an action and its subject matter is the fact or facts which give rise to a right of action (1 Am. Jur., Sec. 2, p. 404; 1 C. J. S., Sec. 1(i), p. 959) and must not be confused with the damages, even though damages may be one of the essential prerequisites to recovery. Damages may be an element of, but not of itself a cause of action. 1 C. J. S., Sec. 8(h), p. 986. "In actions on the case for negligence, the cause of action is the breach of duty and not the consequential damages resulting therefrom, . . . . ." Schade v. Gehner, 133 Mo. 252, 34 S. W. 576. So it is with the injury and damages, "in strict legal significance, there is, properly speaking, a material distinction between the two terms, in that injury means something done against the right of the party, producing damage, whereas damage is the harm, detriment, or loss sustained by reason of the injury. The term 'damages' is used to denote the sum recoverable as amends therefor." 1 C. J. S., Sec. 15(a), p. 1005.

And, in this connection, again some further implications are suggested by the cases. While no one ever raised the question, so far as we know, it has always been assumed that any authorized appropriation of a cause of action for wrongful death extinguished any and all rights of action or claims for damages for that death whether under the penal or the compensatory section of the act. The Strode case, as we have noted, was under the compensatory section. In Blessing v. C., B. & Q. R. Co., (Mo.) 171 S. W. (2d) 602 and Hamilton v. Missouri Pac. Ry. Co., 248 Mo. 78, 154 S. W. 86, minor children sued under the [937] penal section after the wife had settled, the children claiming that the wife must have actually instituted a suit within six months to appropriate the cause of action, but it was held that the wife's settlement extinguished the cause of action. Likewise, a guardian's settlement extinguished a minor wife's cause of action for her husband's death. Williams v. C., B. & Q. R. Co., 320 Mo. 46, 6 S. W. (2d) 929. In connection with damages under the statute one other case may be noted. In Perkins v. Wilcox, 294 Mo. 700, 242 S. W. 974, the plaintiff sought and recovered a verdict for $10,000 actual damages and $10,000 punitive damages. An astonished court said: "The maximum amount of recovery in a death case is $10,000, and yet the plaintiff sued for $25,000, and the court actually permitted a judgment to be entered for $10,000 as compensatory damages, and a like amount for exemplary damages."

The implication, therefore, from all the cases is that there can be but a single recovery of damages under but one section of the wrongful death statute, even though the cases do not in point of fact directly concern the question of the recoverable damages. In addition to the implications of the cases there is one other circumstance and cogent reason compelling the conclusion.

And that is the fact that this statute has been in effect, with both the penal and compensatory sections, since 1855 and this is the first and only time anyone ever thought that both damages could be recovered in one action for the same death. It was unsuccessfully attempted in the Brownell case but so far as we can discover this is the first time it has even been attempted since that case and that is more than seventy-five years. This auxiliary rule of contemporaneous construction and usage of statutes, especially by unofficial interpreters, is not conclusive and may not be employed when the language or meaning of a statute is plain and unambiguous. State ex rel. Cobb v. Thompson, 319 Mo. 492, 5 S. W. (2d) 57. But in the circumstances of this case, including the circumstance that it has not been done since 1855, the legislative intention and the meaning of the statute is ambiguous indeed. In such circumstances "A construction of a statute acted on generally by the bar of the state for many years is entitled to consideration. Indeed, there are cases in which the meaning publicly given a statute by long professional usage has been presumed to be the true one, and regarded as one which should not be likely changed." 50 Am. Jur., Sec. 320, p. 312; 2 Sutherland, Statutory Construction, Secs. 5101-5108; Matthews v. Matthews, 186 Okla. 245, 96 P. (2d) 1054, 1055; Kithcart v. Metropolitan Life Ins. Co., 55 F. Supp. 200. "The common consent and opinion of the legal profession in this state has been that it was not necessary to make a wife a party in order to bar her inchoate right of dower, either as to a railroad right of way or other public highway. This of itself is a very pregnant circumstance, and very good evidence of what the law is." Venable v. Wabash Ry. Co., 112 Mo. 103, 125, 20 S. W. 493. The rule has been employed heretofore in the construction of our wrongful death statute. In Matz v. Chicago & A. R. Co., 85 Fed. 180, the deceased died immediately after the injury and it was contended, among other things, since he had no cause of action in his lifetime, that he could transmit none to his father and mother under the penal section of the statute, Mo. R. S. A., Sec. 3652. The court collected and reviewed all the Missouri cases down to 1898 and pointed out the conflicts and inconsistencies. In conclusion, the court said: "Is it probable that all the learned judges and counsel engaged in deciding and prosecuting these suits, and the various suits under this act, overlooked this precise question? It seems hardly credible. The uniform and contemporaneous action and opinion of the bench and bar should have weight in determining the construction of a statute."

From these two things, the implications of the cases and the long years of apparent tacit construction by the bench and bar, it is our conclusion that a plaintiff may not recover both the damages of the penal and the compensatory section of the act for one death but must make a choice before final submission and elect which of the two damages she would have [938] the jury assess. For this reason the cause

must be remanded and we consider only such further assignments of error as are absolutely necessary to a disposition of the appeal.

The railroad contends that the plaintiff failed to make a submissible case under both counts of her petition but for the purpose of disposing of this appeal it is only necessary to say whether she made a case under either count; and it is not necessary to consider any other assignments of error, as these latter questions may not arise again. The railroad admits that the plaintiff made a submissible case of failure to give the statutory crossing signals (Mo. R. S. A., Sec. 5213) under the first count of her petition but contends, nevertheless, that its motion for a directed verdict should have been sustained because the failure to give the signals was not the proximate cause of the collision and death and furthermore that the deceased, Jackson, was, as a matter of law, guilty of contributory negligence.

There are four switch and spur tracks and one main line track at and near Hutchinson Street but, as we understand the record, though it is not perfectly clear, there are six rails immediately in the crossing, four of them coming together to form a switch track and two of them being the main line track. Jesse Jackson's 1931 Chevrolet was struck on the main line track as he traveled south. From the southermost rail to the south rail of the main line it is 110 feet. At this point, the south rail of the spur track, Jackson stopped his car and he and his passenger, Cooksey, looked and listened but did not see or hear a train or any warning signals. Their view to the east was obstructed by a tie pile and later, perhaps, by a box car. Jackson started forward in low gear, shifting into second and proceeded on at a speed of eight to ten miles an hour. When they were first able to see down the main track they were about twenty-five feet from the south rail of the main line track and a locomotive was coming about 150 feet away at a speed of thirty-five miles an hour. Jackson immediately applied his brakes and tried to turn his wheels but the roadway was covered with ice and snow and the car "kept skidding up the track" and was practically stopped when the front end was hit by the engine. Had the roadway been dry, free of ice and snow, the car could have been stopped in four feet.

The railroad points to these latter facts and insists that its negligence in failing to give the statutory signals was a remote proximate cause and that the ice and snow, a condition over which it had no control, was a direct intervening proximate cause. In this connection it is insisted that its case falls squarely within Wood v. Wells, (Mo.) 270 S. W. 332 and DeMoss v. Kansas City Rys. Co., 296 Mo. 526, 246 S. W. 566. But, the railroad's argument overlooks the important fact that in both those cases the occupants of the automobiles saw the streetcars when the streetcars were seventy-five feet away and time and space in which to stop the automobiles. Hence a signal or

warning by the streetcars would have been of no avail, as the court, in those cases, noted. Here there was time and space under normal conditions in which to stop the automobile after Jackson saw the train but "in neither of such cases, because of the nature of the facts at issue, could the failure of the defendant to have given a warning have contributed so directly and proximately to the subsequent injury as in the case now under consideration." Sisk v. C., B. & Q. R. Co., (Mo. App.) 67 S. W. (2d) 830, 835. So, in this case, had the railroad given the statutory signals when Jackson first stopped, where he should have and did, perhaps he would not have gone forward into danger but would have stopped short of the danger zone. "We think that defendant's failure to warn plaintiff of the approach of the train contributed to the collision as, at least, one of the proximate causes thereof. Plaintiff knew that the road was icy and slick and was listening intently for the approach of the train, which he knew was due, as he passed along the obstruction that prevented his seeing its approach. The jury could have reasonably inferred that a sudden blast of the whistle would have been heard, heeded and acted upon by plaintiff at that time." Hence it was held to be for the jury to say whether failure to give the warning was one of [939] the proximate causes. Leavell v. Thompson, 238 Mo. App. 130, 137, 176 S. W. (2d) 854, 857. The railroad as well as Jackson knew of the ice and snow and even though it admittedly played a part in causing the injury it cannot be said to have been a new, intervening, efficient proximate cause completely exculpating the railroad's conceded negligence. Williams v. Thompson, (Mo. App.) 166 S. W. (2d) 785.

Upon the same facts it is claimed that Jackson was guilty of contributory negligence as a matter of law. The railroad points to the duty upon Jackson as he approached the crossing and insists that the case falls within Borrson v. M.-K.-T. R. Co., 351 Mo. 229, 172 S. W. (2d) 835; State ex rel. Kurn v. Hughes, 348 Mo. 177, 153 S. W. (2d) 46; Evans v. Illinois Central R. Co., 289 Mo. 493, 233 S. W. 397 and Scott v. Kurn, 343 Mo. 1210, 126 S. W. (2d) 185. But as is pointed out in a case considered and handed down concurrently herewith Doyel v. Thompson, 357 Mo. 963, 211 S. W. (2d) 704, No. 40,442, in none of these cases did the plaintiff or deceased stop, look and listen for the approaching train. The Doyel case covers fully, in substance, this phase of the instant case. In short, without further detailing the facts and distinguishing the cases, this case plainly falls within Leavell v. Thompson, supra; Williams v. Thompson, supra; Sisk v. C., B. & Q. R. Co., supra; Dobson v. St. L.-S. F. Ry. Co., 223 Mo. App. 812, 10 S. W. (2d) 528 and Nicholas v. C., B. & Q. R. Co., (Mo. App.), 188 S. W. (2d) 511, rather than within the cases relied upon by the railroad. Proximate cause, contributory negligence and the railroad's negligence were all questions of fact for the jury.

1010

The judgment is reversed and the cause remanded. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.