# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3005

_____

Christi Thompson; Brad Thompson; Melissa Thompson; Michelle Lombardo; Stephanie Maddux

*Plaintiffs - Appellants*

v.

R. J. Reynolds Tobacco Company; Philip Morris USA, Inc.; MFA Petroleum Company, Inc.; Barber & Sons Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 14, 2014
Filed: July 30, 2014

_____

Before LOKEN and MURPHY, Circuit Judges.[1]

_____

MURPHY, Circuit Judge.

---

[1]  While the Honorable Jane Kelly, Circuit Judge, heard oral argument in this case, she did not participate in the court's decision because of her recusal on May 13, 2014.

After Michael Thompson's death from throat cancer in 2009, his wife Christi Thompson and the couple's children (collectively the Thompsons) brought this wrongful death action in state court against cigarette manufacturers R. J. Reynolds Tobacco Company and Philip Morris USA, Inc., retailer MFA Petroleum Company, Inc., and wholesale distributor Barber & Sons Company.[2] The defendants removed the case to federal court, arguing that both of the nonmanufacturers had been fraudulently joined.

The defendants also moved to dismiss on the grounds that the family's claims were barred by res judicata. Before Michael's death Michael and Christi Thompson had brought a personal injury suit against the same defendants in state court and had obtained a judgment of over one million dollars. The district court[3] ruled that under Missouri law the Thompsons could not bring a wrongful death action after Michael Thompson had during his lifetime litigated his personal injury claims arising from the same conduct. After concluding that the nonmanufacturers had been fraudulently joined, the district court exercised jurisdiction over the action and granted the defendants' motions to dismiss. The Thompsons appeal, and we affirm.

I.

Michael Thompson began smoking cigarettes sometime before 1969 while he was still a minor and continued until 1997 when he was diagnosed with lung cancer. During this time he smoked cigarettes with the brand names of Winston, Doral, Marlboro, and GPC Lights. These cigarettes were manufactured by Brown & Williamson Tobacco Corporation, R. J. Reynolds Tobacco Company, and Philip

---

[2] The original party Barber & Sons Tobacco Company, merged with Barber & Sons Company in 2012.

[3] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

Morris USA, Inc., and were purportedly distributed and sold to Michael Thompson by defendants MFA Petroleum and Barber & Sons Tobacco.

After his 1997 diagnosis of lung cancer, Michael Thompson and his wife Christi brought a personal injury action against these manufacturers, distributers, and sellers in Missouri state court. The couple argued that Michael's throat cancer was a result of smoking the cigarettes manufactured, distributed, and sold by the defendants and that these companies should be found liable for concealment, negligence, product defect, and failure to warn. In 2003 the state court granted summary judgment to nonmanufacturers MFA Petroleum and Barber & Sons, but ruled that the claims against Brown & Williamson and Philip Morris should be tried before a jury (R. J. Reynolds, the successor in interest to Brown & Williamson, had earlier been dismissed without prejudice in the original state court action). The jury found the manufacturers liable for product defect and negligence, and Michael and Christi Thompson obtained a judgment in their favor totaling $1,046,754. The state appellate court affirmed in 2006. Thompson v. Brown & Williamson Tobacco Corp., 207 S.W.3d 76, 86, 128 (Mo. Ct. App. 2006).

Michael Thompson died from his throat cancer in 2009. Christi Thompson and their children brought the present action in Missouri state court in August 2012. The Thompsons argue that Michael "died of injuries caused by cigarettes manufactured and sold by" defendants R. J. Reynolds, Philip Morris, MFA Petroleum, and Barber & Sons. The plaintiffs asserted seven causes of action: offensive nonmutual collateral estoppel based on the earlier 2003 state court judgment, negligence, strict liability, strict liability for failure to instruct, fraudulent concealment, conspiracy, and violation of the Missouri Merchandising Practices Act.

Manufacturing defendants R. J. Reynolds and Philip Morris removed the case in November 2012 to federal court on the basis of diversity jurisdiction, arguing that nondiverse defendants MFA Petroleum and Barber & Sons had been fraudulently

joined because there was no reasonable basis for the Thompsons' claims against them. The remaining defendants then moved to dismiss, arguing that the claims asserted against them were barred by §§ 537.080 and 537.085 of the Missouri Revised Statutes because Michael Thompson had fully and fairly litigated them and received full satisfaction during his lifetime.

The Thompsons moved for remand to state court in March 2013. The district court concluded that under the Missouri wrongful death statute the claims in this case against MFA Petroleum and Barber & Sons were barred by the earlier state court judgment and these parties had thus been fraudulently joined in this case. The district court denied the motion to remand and granted the nonmanufacturers' motions to dismiss. Since the court had jurisdiction over the remaining claims, in a separate order it granted the motion to dismiss as to those defendants, manufacturers R. J. Reynolds and Philip Morris, concluding that the wrongful death claims against them were also barred by the earlier personal injury judgment. The district court entered final judgment accordingly, and the Thompsons now appeal.

II.

Whether the Thompsons fraudulently joined defendants MFA Petroleum and Barber & Sons to defeat diversity jurisdiction is a question of subject matter jurisdiction reviewed de novo. Wilkinson v. Shackelford, 478 F.3d 957, 963 (8th Cir. 2007). A party has been fraudulently joined when there exists "no reasonable basis in fact and law" to support a claim against it. Block v. Toyota Motor Corp., 665 F.3d 944, 947 (8th Cir. 2011) (quoting Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 811 (8th Cir. 2003)); see also Junk v. Terminix Int'l Co., 628 F.3d 439, 445–46 (8th Cir. 2010) (discussing application of the Filla standard after a motion to dismiss). If the nonmanufacturer defendants were fraudulently joined, both the district court's denial of the motion to remand and its dismissal of these parties were proper. Block, 665 F.3d at 947–48.

-4-

Missouri law controls the substantive issues in this diversity case. Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005). Under Missouri's wrongful death statute, a decedent's spouse or children may sue for damages, "[w]henever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof." Mo. Rev. Stat. § 537.080.1. In such a wrongful death action, a defendant may assert "any defense which the defendant would have had against the deceased in an action based upon the same act, conduct, occurrence, transaction, or circumstance which caused the death of the deceased, and which action for damages the deceased would have been entitled to bring had death not ensued." Mo. Rev. Stat. § 537.085. The Thompsons argue that the district court erred by concluding there had been fraudulent joinder, by dismissing nonmanufacturers MFA Petroleum and Barber & Sons, and by denying their motion to remand because there is a reasonable basis on which to conclude that the statute supports their wrongful death claims as distinct from any prior claims Michael Thompson had for personal injuries. We disagree.

Over 100 years ago in Strode v. St. Louis Transit Co., 95 S.W. 851, 853 (Mo. 1906) (en banc), the Missouri Supreme Court directly addressed the question of "whether or not, where a person is injured through the negligence . . . of another, and before death, makes a settlement with the wrongdoer, can his widow or children yet maintain an action for the death and accrued damage, if any, by reason thereof." In Strode, an express wagon driver had signed a release waiving any personal injury claims he may have had against a transit company whose streetcar collided with his wagon. Id. at 851–52. The driver died two months later from causes possibly attributable to the collision, and his children brought a wrongful death action against the transit company. Id. The Missouri Supreme Court concluded that Missouri law barred the children from pursuing claims previously released by their father. Id. at 856. In reaching this conclusion the court explained:

> Whether the right of action is a transmitted right or an original right; whether it be created by a survival statute or by a statute creating an independent right, the general concensus [sic] of opinion seems to be that the gist and foundation of the right in all cases is the wrongful act, and that <u>for such wrongful act but one recovery should be had</u>, and that if the deceased had received satisfaction in his lifetime, either by settlement and adjustment or by adjudication in the courts no further right of action existed.

<u>Id.</u> (emphasis added). This "one recovery" rule prohibits wrongful death claims under § 537.080 if the decedent has received satisfaction for the same wrongful conduct—whether by adjudication or by settlement—during his or her lifetime. <u>See, e.g.</u>, <u>Campbell v. Tenet Healthsystem, DI, Inc.</u>, 224 S.W.3d 632, 638 (Mo. Ct. App. 2007).

The Thompsons argue that the Missouri wrongful death cause of action has significantly changed since the time <u>Strode</u> was decided, and that these changes make that decision inapplicable here. Specifically, the Thompsons assert that the court in <u>Strode</u> treated a wrongful death action as a right continuing after the decedent's death, but they pointed out that subsequent decisions have rejected this view and concluded that the statute creates a wholly distinct and independent cause of action in the decedent's survivors. <u>See, e.g.</u>, <u>Lawrence v. Beverly Manor</u>, 273 S.W.3d 525, 527–29 (Mo. 2009) (en banc). This argument ignores the plain language of <u>Strode</u>, however. In articulating the "one recovery" rule, the Missouri Supreme Court pointedly discussed the source of the cause of action and wrote that "[w]hether the right of action is a transmitted right or an original right; whether it be created by a survival statute or by a statute creating an independent right . . . the gist and foundation of the right in all cases is the wrongful act, and that for such wrongful act but one recovery should be had." <u>Strode</u>, 95 S.W. at 856.

We have previously rejected the argument that the subsequent adoption of the wrongful death statute affected Strode's underlying holding. See Stern v. Internal Med. Consultants, II, LLC, 452 F.3d 1015 (8th Cir. 2006). In Stern, a mother sought damages against the physicians who allegedly misdiagnosed and mistreated her son's cancer. Id. at 1015. The district court dismissed the case under Strode on the grounds that during his lifetime the son had settled his personal injury action and executed a release of claims against these same physicians. Id. at 1016. On appeal the mother argued that Strode was no longer good law because that opinion had focused on the prevention of double recovery, but under her cause of action double recovery "is no longer possible because wrongful death damages are separate and distinct from any damages the decedent may have received." Id. at 1018. In deciding the case we concluded that the one recovery rule of Strode still applied. Id. at 1019. Under Missouri law, the correct test was "whether [the decedent's mother] c[ould] satisfy the statutory requirement [under § 537.080] that her son could have pursued a claim at the time of his death." Id. at 1018–19. Since the son had settled his malpractice claim during his lifetime, the court determined that he had already recovered from the wrongful act and "no longer had a viable claim when he died." Id. at 1019. In light of the language in Strode and our subsequent discussion in Stern, it is clear that the later changes to the cause of action have had no impact on the Missouri Supreme Court's underlying holding.

The Thompsons' reliance on O'Grady v. Brown, 654 S.W.2d 904 (Mo. 1983) (en banc), is also misplaced. The court in that case determined that a parent could bring a wrongful death action on behalf of an unborn fetus, thereby expanding the class of persons who could bring such an action. Id. While O'Grady certainly "announced a major shift in [the Missouri Supreme Court's] interpretation of Missouri's wrongful death statute," Howell v. Murphy, 844 S.W.2d 42, 46 (Mo. Ct. App. 1992), we agree with the district court that this shift did not affect the precedential value of Strode for this case. The Missouri Supreme Court did not mention Strode in its O'Grady decision, nor did it have need to discuss the "one

-7-

recovery" rule. Moreover, in O'Grady the Missouri en banc court was careful to limit its holding "to the facts presented." Id. at 911. The Thompsons can point to no federal or Missouri decision which overrules the holdings in either Strode or Stern. We thus remain bound by these decisions. See Dunne v. Libbra, 448 F.3d 1024, 1027 (8th Cir. 2006) ("[A federal court sitting in diversity is] obliged to follow controlling decisions of the highest court of the State rather than inconsistent rulings of an intermediate appellate court."). As a result the one recovery rule under § 537.080 is "clear under governing state law." Filla, 336 F.3d at 810 (emphasis in original).

The Thompsons finally argue that even if the "one recovery" rule is applicable, it is unavailable here because the defendants failed to provide a certified copy of the state court judgment on which they rely. This argument is without merit. For a court sitting in diversity, judicial notice is a matter of procedure governed by federal law. Getty Petroleum Mktg., Inc. v. Capital Terminal Co., 391 F.3d 312, 323 n.15 (1st Cir. 2004). A district court may properly take judicial notice of items in the public record, such as judicial opinions. Kent v. United of Omaha Life Ins. Co., 484 F.3d 988, 994 n.2 (8th Cir. 2007). Moreover, the Thompsons themselves pleaded the existence of the earlier judgment when they asserted in this case a claim of offensive nonmutual collateral estoppel on the basis of the 2003 state judgment for Michael and Christi Thompson. The district court properly took notice of that previous judgment. And it correctly determined that under the "one recovery" rule of § 537.080, Michael Thompson no longer had a viable claim against these defendants when he died. See Stern, 452 F.3d at 1019.

There can thus be no reasonable basis in law or fact to support the Thompsons' claims against the nonmanufacturing defendants MFA Petroleum and Barber & Sons. See Filla, 336 F.3d at 810 ("Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent."). We conclude the district court did not err in finding fraudulent joinder, denying the Thompsons' motion

for remand, and then dismissing the nonmanufacturers MFA Petroleum and Barber & Sons from the case.

## III.

We review de novo the district court's grant of the manufacturers' motion to dismiss, taking all facts alleged in the complaint as true. Bradley Timberland Res. v. Bradley Lumber Co., 712 F.3d 401, 406 (8th Cir. 2013). The standard to survive a Rule 12(b)(6) motion to dismiss is more demanding than the Filla "reasonable basis" standard applied in challenges to a finding of fraudulent joinder. See Junk, 628 F.3d at 445. As already discussed above, the "one recovery" rule of § 537.080 bars recovery against the defendants in Thompson's earlier suit for a wrongful death caused by the same conduct. Thus, the district court was clearly correct in dismissing the claims against the manufacturing defendants under the more demanding of the dismissal standards. As a result of the 2003 judgment in his personal injury suit, Michael Thompson no longer had a viable claim against the cigarette manufacturers at the time of his death, and his family is barred from bringing such a claim now.

## IV.

Accordingly, we affirm the judgment of the district court.

_____