**MRS. BAIRD'S 'BREAD COMPANY et al.,**
**Appellants,**

v.

**P. A. WILLIAMS, Appellee.**

No. 7866.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 13, 1968.

Rehearing Denied March 12, 1968.

Howard Waldrop, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellants.

Bascom Perkins, Perkins & Perkins, Mt. Pleasant, for appellee.

FANNING, Justice.

A truck-automobile collision case. P. A. Williams sued Mrs. Baird's Bread Company, a corporation, and its employee truck driver, Banks, who was acting in the scope of his employment, for damages for personal injuries, occasioned by the collision of defendant's bread truck with plaintiff's automobile. The collision in question occurred at the intersection of North Van Buren and West 12th Streets in the City of Mount Pleasant, Titus County, Texas. Plaintiff was driving on W. 12th Street, a through street, and had the right of way and was almost through the intersection when the bread truck collided with the right rear fender and bumper of his automobile. In response to special issues submitted a jury found to the effect that defendants were guilty of several acts of negligence proximately causing injuries to the plaintiff. The jury found to the effect that Banks failed to keep a proper lookout, failed to stop the bread truck at a stop sign at the intersection, that Banks drove the truck into the path of the P. A. Williams automobile, that Banks failed to apply the brakes on his truck as a person of ordinary prudence would have done under the same or similar circumstances. The jury in response to the damages issues, 12, 13, 14 and 15, awarded plaintiff $21,000.00 for his injuries, plus $737.65 for past doctor, medical and hospital expenses, plus $2,000.-00 for future doctor, medical and hospital services, aggregating a total award of $23,-737.65. The jury in response to special

issues submitted also acquitted the plaintiff of any and all acts of contributory negligence. Judgment was entered for plaintiff upon the verdict of the jury and appellants have appealed.

Appellants present 8 points upon appeal. Appellants' points 1, 2 and 3 are briefed together and are as follows:

"POINT OF ERROR NO. 1

"THE VERDICT OF THE JURY, FINDING THAT THE PLAINTIFF, P. A. WILLIAMS, WAS NOT NEGLIGENT IN FAILING TO KEEP A PROPER LOOKOUT WHICH NEGLIGENCE WAS A PROXIMATE CAUSE OF THE COLLISION IN QUESTION, IS CONTRARY TO THE OVERWHELMING WEIGHT AND PREPONDERANCE OF THE EVIDENCE AND IS, IN FACT, NOT SUPPORTED BY ANY EVIDENCE.

"POINT OF ERROR NO. 2

"THE VERDICT OF THE JURY, FINDING THAT THE PLAINTIFF, P. A. WILLIAMS, WAS NOT NEGLIGENT IN FAILING TO KEEP A PROPER LOOKOUT WHICH NEGLIGENCE WAS A PROXIMATE CAUSE OF THE COLLISION IN QUESTION, IS SUPPORTED BY INSUFFICIENT EVIDENCE.

"POINT OF ERROR NO. 3

"THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR NEW TRIAL OF DEFENDANTS, MRS. BAIRD'S BREAD COMPANY AND ALVIN DEWEY BANKS, FOR THE REASON THAT THE UNCONTROVERTED EVIDENCE ESTABLISHES AS A MATTER OF LAW THAT PLAINTIFF, P. A. WILLIAMS, FAILED TO KEEP A PROPER LOOKOUT."

For a comprehensive discussion of the law applicable to the determination of such character of points, see Chief Justice Calvert's article, "No Evidence and 'Insufficient Evidence' Points of Error", 38 Tex. Law Rev., No. 4, p. 361.

The collision in question occurred on May 26, 1966, about 12:45 P.M. at the intersection of West 12th Street with North Van Buren Street in the City of Mount Pleasant, Texas. West 12th Street runs generally in an East and West direction and North Van Buren runs in a North and South direction. North Van Buren dead-ends into West 12th at the intersection where the collision occurred. Photographs of the intersection are shown in the record. There was a large stop sign erected on North Van Buren Street, so as to indicate that motorists should stop before proceeding into the intersection with West 12th Street. There were no stop signs or traffic signals on West 12th Street at this intersection. Plaintiff P. A. Williams was driving East on West 12th Street at about 20 or 25 miles per hour; and he had observed defendant's bread truck coming from the South on North Van Buren when he was 40 to 50 feet from the intersection. Williams was quite familiar with W. 12th Street as he lived on it and it was a street which led towards the place where he was working and he was familiar with the stop sign at North Van Buren Street and he expected the bread truck to stop at the stop sign before proceeding into the intersection with W. 12th Street.

Considering the evidence most favorable to the verdict as we must do with respect to the "no evidence" question, about the time he entered the intersection, Williams turned his head to the left to spit tobacco and immediately the bread truck came into W. 12th Street and struck the right rear quarter panel and bumper of Williams' automobile. Williams admitted that he did not see the bread truck at the exact time of the impact as his head was turned to the left but that his automobile had already passed the intersection when the bread truck hit the right rear fender and bumper of his automobile. There is evidence from

plaintiffs' witnesses that indicates that the collision occurred at a time when defendant's truck was about four feet into the intersection and that Williams' automobile was through or virtually through the intersection when the defendant's bread truck struck Williams' car at its right rear bumper and right rear fender.

Banks, the driver of defendant's bread truck, while claiming that he had stopped at the stop sign on North Van Buren, admitted that he did not look to his left from where the Williams car was coming, before proceeding to the intersection, and he detailed his version of the collision, in part, as follows:

"Q. What size bread truck was this that you were in that day, sir?

A. It's a one ton van type.

Q. Is it dual wheeled?

A. Yes, sir.

Q. All right, You say then you proceeded north on North Van Buren Street and you knew where that stop sign was, didn't you?

A. Yes, sir.

Q. You had driven that many times?

A. Yes, sir.

Q. It was a large visible stop sign there, wasn't there?

A. Yes, sir.

Q. All right, when you drove up there and stopped now did you look to your left?

A. No, sir.

Q. Why didn't you look to your left?

A. It's just a habit. I always look to the right to see if this is clear before checking out this way then I look to the left before taking off.

Q. If you had looked would there have been anything to keep you from seeing Mr. Williams' vehicle coming from the left when you looked?

A. I would have saw it when I did look before I took off.

Q. But you never did look and never did see the vehicle, did you?

A. Not until he came in front of me.

Q. Tell the jury whether you even saw Mr. Williams' vehicle?

A. When I turned to look around and looked—just as I turned my head when he went by the front of me.

Q. Are you telling the jury then that you never saw Mr. Williams' vehicle at all until he passed in front of your truck?

A. The top of it was right in front of the truck when it hit.

Q. You didn't see him at all?

A. I hadn't looked that way.

Q. Why didn't you see Mr. Williams' automobile then?

A. I was looking this way then going to look this way before I went out into the street. (Indicating)

Q. But this is the reason you tell the jury you didn't see him, you just never did even look to see, is that right?

A. I was fixing to look this way before I went out into the street.

Q. Fixing to look? Now, you are not telling the jury that your truck wasn't out in West 12th Street when Mr. Williams hit it, are you?"

\*　\*　\*　\*　\*　\*

"WITNESS: I would say approximately like. I had the vehicle it might have been, if it was measured there, maybe that left corner a few inches out but not much.

Q. You testified a minute ago you saw it as it came by there before it hit, didn't you?

A. Not until the bumper hit it.

Q. What part of the Williams' car hit your car?

A. His left bumper right on the corner where it wraps around the fender.

Q. Are you confused? His left bumper or right bumper?

A. I'm sorry, his right bumper.

Q. His right rear bumper hit what portion of your truck?

A. The left corner of my bumper where it curves just a little.

Q. And you tell the jury you never even saw it until it hit?

A. No, sir. When the lick hit, I was just fixing to turn around and he was going by me just about the same time."

Appellant, among other contentions, contends that appellee, Williams, by his own testimony conclusively showed as a matter of law that he was not keeping a proper lookout and that same as a matter of law was a proximate cause of the collision. In this connection appellant quotes testimony of appellee with respect to turning his head and spitting tobacco out of the car window. At one place in his testimony appellee stated that the time elapsed for this purpose was two or three seconds. However, he later modified this testimony to the effect that the time elapsed was a second or a second and a half, probably a second. We quote from appellee's testimony in part as follows:

"Q. Now then, about how long did you stay with your head turned spitting out the window?

A. Oh, possible two seconds or three.

Q. All right, sir. With your car moving, of course, 20 or 25 miles an hour?

A. Yes, sir.

Q. Do you know how many feet per second an automobile is moving when it is going say 20 miles an hour?

A. I don't know that. But I know that a car moving at 60 miles an hour is traveling 88 feet a second. 30 would be 44 feet a second and 20 miles an hour—it could be traveling 22 feet a second.

Q. About 22 feet per second?

A. Yes, sir.

Q. So then you would travel in the time that you did this at least 44 feet, is that correct, sir, 44, maybe 50 feet?

A. Well, I kon't know. But traveling 20 miles an hour, if I turned my head at that intersection to spit—*if I was out of it a second*—I wouldn't know how to judge that exactly. But assume I was a *second or second and a half*, you just turn your head and spit and come back.

Q. Just kind of like that? (Snapping fingers)

A. That's right. *Probably a second.* Well I could have traveled 20 feet, 22 feet."

Under the record in this case appellee Williams had the right-of-way as he was proceeding East on West 12th Street. Under the provisions of Art. 6701d, Sec. 73(b), the Baird's truck driver Banks was required to stop the bread truck at the stop sign on North Van Buren and to proceed cautiously, yielding to vehicles not so obliged to stop which were in the intersection or approaching so closely as to constitute an immediate hazard. Under his own testimony the truck driver Banks failed to do this. Appellee Williams, while having seen the bread truck approaching on North Van Buren, when Williams was about 40 or 50 feet back from the intersection, was not required to anticipate that defendant's bread truck and defendant's driver would negligently or unlawfully fail to yield to appellee Williams the right-of-way. Intges v. Dunn, 311 S.W.2d 877, Tex. Civ.App., wr. ref'd. n.r.e. (1958); Texas & N. O. R. Co. v. Brannen, 140 Tex. 52, 166 S.W.2d 112, Tex.Comm.App., op. adopt. (1942); Seinsheimer v Burkhart, 132 Tex.

336, 122 S.W.2d 1063; Tex.Comm.App., op. adopt. (1939); Hooper v. Holt et al., Tex. Civ.App., 416 S.W.2d 916, no writ (1967). Although appellee Williams had the right-of-way, yet ordinary care required him to keep a proper lookout as he proceeded through the intersection. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95 (Tex. 1955); Hooper v. Holt, et al., Tex.Civ.App., 416 S.W.2d 916, no writ (1967). Having the right of way does not solve Mr. Williams' contributory negligence problem, but it does limit the reach of his conduct. Hooper v. Holt, et al., supra. Mr. Williams' duty to maintain a proper lookout was the duty of a person with the right of way under no obligation to anticipate Bank's negligent or unlawful conduct; and Williams' conduct, to be negligent, must have violated his duty.

■ ■ Ordinarily, proper lookout is a question for the jury. Texas & Pacific Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332 (1946). The appellate court, in considering "no evidence" questions must consider that evidence, if any, which viewed in its most favorable light supports the jury's findings. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957).

■ Viewing the evidence most favorable to the verdict of the jury with respect to the issues exonerating appellee of contributory negligence, it is our view that there is evidence of probative force in the record to support the view, that although the appellee was not looking for a very short period of time, as indicated by the record, while spitting tobacco, nevertheless a fact question is raised that even if he had been looking all of the time, he would not have had time to take precautionary action to prevent the collision after he had discovered that the bread truck was not going to stop or was not going to proceed into the intersection in a cautious manner and therefore appellee, would not therefore be guilty of negligence, as a matter of law, in failing to avoid the collision. It

is our further view that this record does not show, as a matter of law, that any alleged negligence on the part of appellee Williams was a proximate cause of the collision in question.

We hold that there was evidence of probative force to support the jury's findings to the issues exonerating appellee Williams of any contributory negligence.

We also hold that the findings of the jury exonerating appellee Williams of any contributory negligence are supported by sufficient evidence.

We have also carefully considered the entire record in this case in the light of the rules announced in the case of In Re: King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952), and hold that the findings of the jury exonerating appellee Williams of contributory negligence were not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

Appellants' points 1, 2 and 3 are overruled.

Appellants' points 4, 5, 6 and 7 are briefed together, and complain of the trial court's refusal to sustain appellants' objections to arguments of appellee's attorneys, in failing to instruct the jury to disregard, and in overruling appellants' motion for new trial on account of the arguments complained of by appellants as arousing passion and prejudice against appellants and alleged by appellants as resulting in passion and prejudice on the part of the jury against appellants.

The arguments complained of, the objections of appellants, request for instructions, statements of counsel and statements of the court, in connection with the matters above complained of by appellants, are shown in the statement of facts as follows:

"Now, members of the jury, we come down now to the issue as to how much this jury will award the plaintiff, P. A.

Williams, for damages suffered in this accident.

"Now, this is something to me that is amazing as to the amount of damages that the defense lawyers want to give to people who are hurt and crippled in accidents. They are all alike, Mr. Waldrop is no different, they smile, they talk nice, they are polite and they do everything except pay you.

"Now, who is entitled to be paid? We are not filing any charges against Mr. Banks. All we want is the Baird's Bread Company, a corporation that neither lives nor dies and who operates trucks in East Texas—

"MR. WALDROP: Your Honor, I am going to have to object to this line of argument. First of all, Mr. Banks is a party to this suit and—

"MR. PERKINS: The corporation, just as a corporation. I am talking about the corporation.

"THE COURT: I don't know. What does the proof show?

"MR. WALDROP: Your Honor, we agree its a corporation. But for him to argue in this fashion is highly prejudicial and an attempt to prejudice the jury. And we ask the Court to tell the jury not to consider it, to disregard it for any purpose.

"THE COURT: He has a right to mention it.

"MR. WALDROP: Note our exception.

"MR. PERKINS: The Baird's Bread Company of Dallas, Texas, has the trucks operating in East Texas for the purpose of making money, that's what they are operating their bread truck for, money, they are in business for money and for profit.

"MR. WALDROP: Without continually objecting, may I have a continual objection to this line of argument?

"THE COURT: Yes, sir. I will sustain the objection as to the money.

"MR. WALDROP: Would the Court please instruct the jury to disregard it for any purpose?

"THE COURT: Yes, sir.

"MR. PERKINS: And all we ask in this lawsuit is that this jury award a sufficient judgment for damages to adequately compensate and pay Mr. Williams for the damages that he suffered as a result of this accident."

██ Since the Supreme Court's decision in Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953), the rule is well settled that before a judgment will be reversed because of argument of counsel, the argument must be improper and it must be that the same was reasonably calculated to cause and probably did cause, the rendition of an improper judgment in the case.

██ It is our opinion that the arguments and matters complained of by appellants in their points 4, 5, 6 and 7, as viewed in the light of the whole record in this cause, were not reasonably calculated to cause and probably did not cause the rendition of an improper judgment in the cause, and do not present reversible error. Rule 434, Texas Rules of Civil Procedure; The Development of the Harmless Error Rule in Texas, Calvert 31 Tex.Law Rev., No. 1, p. 17; Aultman v. Dallas Ry. & Term. Co., supra, (260 S.W.2d 596); Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404 (1954); Whitener v. Traders & General Insurance Co., 155 Tex. 461, 289 S.W.2d 233 (1956); St. Louis Southwestern Railway Co. v. Gregory, 387 S.W.2d 27 (Tex.1965).

Appellants' points 4, 5, 6 and 7 are overruled.

Appellants' 8th point reads as follows:

"POINT OF ERROR
NO. 8 RESTATED

"APPELLANTS MAKE SUGGESTION OF REMITTITUR UNDER RULE 440, TEXAS RULES OF CIVIL PROCEDURE, FOR THE REASON.

THAT PASSION AND PREJUDICE OF THE JURY CAUSED IT TO BE EXCESSIVE AND IN DISREGARD OF THE EVIDENCE."

In Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017, (1950), the Supreme Court, in construing Rule 440, Tex.R.Civ.P., stated in part as follows:

" * * * We believe that under this rule a Court of Civil Appeals may require remittitur when, after consideration of the amount of the verdict and the evidence bearing upon the amount, it finds that the verdict is excessive and that the cause should be reversed for that reason only. The amount of the verdict itself, when considered in the light of the evidence in the record, may be enough to convince the Court of Civil Appeals that it was the result of passion or prejudice or other improper motive or was in disregard of the evidence. In our opinion there need not be extraneous proof of passion or prejudice on the part of the jury. Indeed, it would be in many cases very difficult and often impossible to make that proof. The foregoing conclusions find support in Judge Martin's opinion, adopted by the Supreme Court in World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962."

Also in this connection see Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959).

The elements of damages in this case and the evidence pertaining thereto must be considered to determine whether the award as a whole appears to be reasonable compensation for the injuries sustained or whether same is excessive.

■ We do not construe appellants' brief as complaining of the award of $735.65 for past medical and hospital bills and the award of $2,000.00 for future medical and hospital bills. These two items have overwhelming support in the evidence and are not excessive under this record.

■ With respect to the damage issue wherein Mr. Williams was awarded the sum of $21,000.00, the jury was advised by the court substantially to the effect that it could take into consideration past physical pain and mental anguish suffered by Mr. Williams, if any, and physical pain and mental anguish, if any, which Mr. Williams would in reasonable probability suffer in the future, as a proximate result of the collision in question, and past loss of earnings, if any, and loss of earning capacity, if any, that Mr. Williams would in reasonable probability sustain in the future as a proximate result of the collision in question.

There was voluminous evidence introduced on the trial of the cause on the issue of damages suffered by appellee. This evidence consisted of detailed testimony of plaintiff as to his pain and suffering, his loss of past earnings and evidence relating to the reasonable probability of future loss of earnings. His wife corroborated him on his pain and suffering and other aspects of his injuries and inability to move his neck properly; many lay witnesses, including the Sheriff of Titus County, corroborated him in many respects with reference to his appearance and inability to move his neck properly and complaints of pain, etc. There was ample medical testimony to show his injuries and to corroborate his claims of pain and suffering.

On the date of the collision in question appellee Williams was hospitalized for a day and a half; ten days later he was readmitted to the hospital on June 6, 1966 and discharged June 23, 1966, for a total of 19½ days in the hospital. Dr. Ball, who had been Mr. Williams' family doctor for 15 years, testified that Mr. Williams had been in good physical condition prior to the accident; that he suffered a severe sprain to his neck as a result of the injury; that the injury was sufficient to cause a tearing of the ligaments and stretching of muscles of the neck, causing internal bleeding; that the injury as it healed formed scar tissue which caused some fibrous tissue that restricted the motion in his neck; that it

would likely cause traumatic arthritis in the future; that Mr. Williams had a very painful injury, that he was suffering pain the first time he saw him, that his pain continued through the trial which was about 1 year after the accident; that Mr. Williams would suffer pain the rest of his life. Dr. Ball further testified that Mr. Williams, after discharge from the hospital, was required to wear a cervical collar for many months and was treated by him once or twice a week for the entire year before the time of trial. Dr. Ball described the pain in Mr. Williams' neck as being very severe and similar to a "crick" in the neck or severe arthritic pain in a joint or neck. Dr. Ball further testified that the patient could turn his neck to the right only 5 to 10 degrees when he should have been able to turn 45 degrees and that this was a permanent condition. In essence and in summation Dr. Ball firmly testified to the effect that Mr. Williams had a twisted and stiff neck, with the ability to move it to the right only 5 to 10 degrees, which was a permanent condition and that he knew of nothing in medical science that would correct the condition, and as heretofore stated, in his opinion Mr. Williams had an injury which caused severe pain, and would cause severe pain to Mr. Williams for the rest of his life.

Dr. Freiberg, who had examined Mr. Williams at the request of the defendant about 8 months after the accident, while not finding as much disability as Dr. Ball did, in his deposition testimony introduced in evidence, did find many of the things that Dr. Ball did, and found tenderness in Mr. Williams' neck, found that Mr. Williams could not turn his neck to the right, that his neck was cocked to the right, that backward bending of the neck was markedly restricted and painful, found muscle spasm in Mr. Williams' neck, diagnosed it as a severe sprain of the neck and Dr. Freiberg concluded that "based on the fact that the findings are there after nearly eight months, I believe it is a fairly severe injury".

The appellee was an automobile salesman and had a life expectancy of nearly 15 years. There was evidence in the record which would support a recovery for loss of past earnings in excess of $500.00; there was also evidence in the record which we think would support a recovery for some reasonable amount for loss of future earnings for the remainder of his life expectancy.

However, we think that damages with respect to past and future pain and suffering and mental anguish were much greater than the damages with respect to past loss of earnings and future diminished earning capacity. We think the evidence in this case was amply adequate to support a very substantial award for the items of past and future pain and suffering and mental anguish.

Considering all the evidence and the various elements of damages involved, we hold that the award of damages by the jury to plaintiff-appellee was not excessive under the record in this case. Appellants' 8th point is overruled.

The judgment of the trial court is affirmed.