Kathryn GROTHE, Wife of Clifford J. Grothe, Deceased, and Jean Marie Grothe, Barbara Ann Grothe, Joseph Francis Grothe and Steven Michael Grothe, Minor Children of Clifford J. Grothe, Deceased, by and through Kathryn Grothe, their Mother and Next Friend, Respondents,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY CO., a Corporation, Appellant.

No. 54765.

Supreme Court of Missouri, Division No. 1.

Nov. 9, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 14, 1970.

James M. Reeves, Ward & Reeves, Caruthersville, for appellant; John E. McCullough, St. Louis, of counsel.

HIGGINS, Commissioner.

In this joint action by surviving spouse and minor children against railroad for damages for wrongful death of husband and father, a jury awarded plaintiffs $50,000 and judgment was entered accordingly.

Clifford J. Grothe, age 35, died December 21, 1967, from injuries received that date when the motor vehicle which he was operating was struck by defendant's train at the intersection of Old State Road and defendant's railroad tracks in Imperial, Jefferson County, Missouri.

Mrs. Grothe, as surviving spouse, instituted this action by petition filed April 3, 1968, pursuant to provisions of Sections 537.080 and 537.090, RSMo 1959, V.A.M.S., as amended Laws 1967, page 663, section 1. On May 6, 1968, defendant filed motion to dismiss joined with its answer, on grounds that there was a nonjoinder of necessary parties and that the statutes as revised by Laws 1967 were unconstitutional. The motion was overruled and, on October 18, 1968, an amended petition was filed by plaintiffs alleging that on December 21, 1967, plaintiff Kathryn Grothe was lawfully married to Clifford J. Grothe, deceased; that plaintiffs Jean Marie, 11, Barbara Ann, 9, Joseph Francis, 7 and Steven Michael, 2, were "all of the lawful children of" Clifford J. Grothe, born of his marriage to Kathryn, and that Kathryn as widow and her joint plaintiffs as minor children of deceased brought their action under the provisions of Sections 537.080 through 537.100, RSMo 1959, V.A.M.S., as amended Laws 1967. Defendant renewed its motion to dismiss again joined with answer which, among other things, admitted all allegations of relationship between the parties and the deceased husband and father. Apparently, the motion was denied, inasmuch as the parties proceeded to trial on the amended petition and answer.

Thurman, Nixon, Smith & Howald, Robert Lee Smith, Hillsboro, for plaintifs-respondents.

Defendant kept its constitutional challenges alive in its motion for new trial and now continues to assert that the wrongful death act, Sections 537.080 through 537.100, Laws 1967, is unconstitutional. As grounds, appellant contends:

(a) (d) That subsection (1) of Section 537.080, in giving to the spouse and minor children, either jointly or severally, a cause of action for wrongful death, in providing that only one action may be brought, and in requiring that in any such action the petitioner(s) shall satisfy the court that he (they) has (have) "diligently attempted to notify all parties having a cause of action under this subdivision," does not provide, in cases where the suit is brought by the widow, "any effectual means of bringing into the jurisdiction of the court any of the minor children who have a joint interest in the cause of action, so that their rights can be adjudicated";

(b) (c) That subsection 1 of Section 537.095, in providing that the trier of facts shall state total damages found in one amount and that the court shall then apportion the judgment "among those persons entitled thereto as determined by the Court," "purports to authorize the Court to adjudicate * * * conflicting claims of the widow and * * * minor children, although the minor children have never been brought into court"; and that "it undertakes to delegate to the Court a legislative power to divide a final judgment * * * without fixing any guidelines * * * and is so vague, indefinite and uncertain that the Court cannot give an intelligent application to the circumstances. * * *"

■ Appellant's contentions have been stated at length to demonstrate the insuperable difficulty facing them in the posture of this case. The difficulty stems from the admitted presence in this case not only of the surviving spouse but of "all of the lawful children" of the deceased, joined with her in one action. The difficulty is further manifested by appellant's argument which

would pose its contentions by hypothetical situations and questions: When the widow alone files the action, how are minor children to be notified? Can it be said that due process would be served by delivering a notice to an infant? Suppose that a mother filed suit for wrongful death of her husband in Kansas City and that the deceased had minor children living in Chicago, New York, and California. How would the Kansas City court get jurisdiction? Assuming jurisdiction over widow and children, how is the court to make division? One judge might rule one way and another a different way, even though the relationship of parties be the same.

Again, by stating the situations which appellant would argue, it is demonstrated that appellant contends that the statute is violative of due process with respect to nonresident minors, and that it leaves apportionment of damages found by the trier of facts to the court. These circumstances show that appellant's questions are not ripe for answer. In the first situation, there are no interests of nonresident minor children to consider; and, in the second, appellant is not the party to complain of a division between relationships in which it has no interest. In State v. Williams, Mo., 343 S.W.2d 58, defendant contended that the reenactment of the Second offense Act after the date of his offense deprived defendants of their right to jury trial and violated the prohibition against ex post facto laws; however, there was no record to indicate any application of the constitutional provisions in his case, and the court denied relief on the familiar statement: " 'The sum of the matter is, not that his neighbor is hurt, but that a litigant himself must be hurt by the unconstitutional exercise of power before he may vex the judicial ear with complaints.' " 343 S.W.2d l. c. 61 [6]. By the first contention, appellant would have the court assume a hypothesis different from, and irrelevant to, the facts of the case, and such is not the posture in which constitutional questions are answered. Ballentine v. Nester, 350 Mo. 58, 164 S.W.2d 378, was for habeas corpus

seeking release from imprisonment for violation of the St. Louis Smoke Control ordinance. Petitioner attacked the validity of the ordinance on constitutional grounds. The arguments posed theoretical situations of which the court said: "The record does not present any such questions. When the petitioner is charged with an offense innocently committed under the hypothesized circumstance or that when charged * * * that his defense is that he innocently violated this section will be the appropriate time to deal with these academic questions." 164 S.W.2d 1. c. 383–384. To paraphrase, perhaps a case involving the situation of notice to nonresident minors will yet arise on constitutional attack, but only then will the constitutional question be for determination.

■ Neither is appellant in position to challenge the constitutionality of the provision for court apportionment of the award in this case. The challenged section provides only for apportionment of an award between the family members who may be entitled to all or some portion of it. The verdict of the jury has set appellant's obligation at a single sum, and any apportionment of it will not affect its obligation in any respect. Under such circumstances, appellant is not entitled to raise the apportionment issue because it is " 'well settled that a person may not urge the unconstitutionality of a statute in the absence of showing injury. A person may question the constitutionality of a statute only when it is applied to his disadvantage' * * * Appellant has in no way been injured by the alleged defects in the statute (the apportionment feature) * * * and by reason of that statute * * * has not been denied due process of law." Miller v. Police Retirement System, Mo., 296 S.W.2d 78, 79–80 [1, 2]. See also 16 C.J.S. Constitutional Law § 76, pp. 226–236; State v. Mucie, Mo., 448 S.W.2d 879, 886 [1, 2].

State ex rel. Pressner and Co. v. Scott, Mo., 387 S.W.2d 539, 542, and Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763, 769 [13], cited by appellants are not in point on the notice issue because they involved defendants who were being brought into court by unconstitutional process compared to the present plaintiffs who have, on this record, brought themselves into court. Similarly, State ex rel. Orr v. Kearns, 304 Mo. 685, 264 S.W. 775, 781–782, and Missouri Pac. R. Co. v. Morris, Mo., 345 S.W. 2d 52, 57, are not in point on the alleged vagueness of the apportionment provisions because the parties there were affected by the provision in question.

■ Appellant contends that the court erred in denying its motion for directed verdict at the conclusion of the case because plaintiffs did not make a case on the submitted theory of failure to sound a warning signal under the humanitarian doctrine. In stating its point appellant asserts there was no evidence to show when deceased came into a position of imminent peril, to show deceased's obliviousness, and to show how and in what manner the engineer could have given warning "as the whistle was being sounded and the bell was ringing." The argument emphasizes evidence of the defendant's engineer, Robert M. Moore, to the effect he was just a few feet from the crossing when deceased's vehicle came to a stop twelve or eighteen inches over the rail; that he was then blowing the whistle; that he had activated the bell half a mile away from the crossing; and that decedent ignored both.

A review of all the evidence in the light most favorable to the plaintiffs' verdict, including all inferences of fact which a jury might draw with propriety, Kettler v. Hampton, Mo., 365 S.W.2d 518, 521 [1], shows a conflict with respect to the emphasized evidence and other evidence sufficient to warrant submission of plaintiffs' case.

On December 21, 1967, a windy, rainy day, deceased, Clifford J. Grothe, was traveling alone in his 1963 Ford Falcon Club Wagon in a southerly direction, when, at about 11:25 a. m., he was struck by defendant's westbound train where the road makes a grade crossing of defendant's

tracks. Deceased's hearing and eyesight were good. The train, a local, left St. Louis bound for Chaffee, Missouri, with Robert Moore as engineer. It had been scheduled to depart at 5:00 a. m., but did not depart until 8:45 a. m. It had an additional delay of one and three-quarters hours along the way and was approximately five and one-half hours behind schedule at the time of collision. The tracks are a single pair of rails running east and west at the crossing in question. The intersecting road was heavily traveled and, at the time of the collision, was equipped with cross-arm warning and a bell signal which could not be heard in an automobile approaching the crossing if the windows of the automobile were closed. On windy days the bell was hard to hear even if the windows were open. The warnings had not been changed in twenty-five years, even though the area had changed from semirural to basically suburban.

Ruth Nixon approached the crossing a few moments after Mr. Grothe had been struck. She was familiar with the crossing and was aware of the difficulty in hearing the bell. On this occasion, she had her window open and could not hear the bell. From her own experience she knew the crossing to be hazardous by reason of the bell warning and had narrowly missed collision herself on a previous occasion.

Robert Allard was also familiar with the crossing and had also narrowly missed being hit. Similar descriptions of and experiences with the hazardous nature of the crossing were narrated by Otto Roark, Mary Lou Roark, Gwendola Pinkston, Murl Keiser, and Melva Studer. Written request had been made of defendant by the Imperial Improvement Association to install flashing lights at the crossing prior to the tragedy.

Dorothy Bauman lived in a house near the crossing. She saw the Grothe Club Wagon pass her house at five to ten miles per hour. Almost immediately she heard the noise of collision. She did not hear any train whistle, and a whistle blast when sounded is audible in her house even with the windows closed.

According to Engineer Moore the train approached the crossing at 45 or 46 miles per hour. He looked at his speedometer and when he looked up from it he saw the Club Wagon for the first time around 75 feet away, coming downhill toward the tracks, just a few feet from where it stopped. He was blowing the whistle. He stated the vehicle stopped 12 to 18 inches past or south of the north rail and was stopped when struck by the train. When he saw deceased's vehicle when 75 feet away, he did not have time to stop the train before reaching the crossing.

Pictures show the vehicle to have been struck about 10 inches to the rear of the left front corner. The rails were 4 feet 8 inches wide, the engine was 10 feet 2 inches wide, thus overhanging the rails 2 feet 9 inches on each side, all of which showed the vehicle to have been stopped about 2 feet north of the north rail and that a stop made but a foot sooner would have avoided collision. Another photograph showed that a westbound engineer, when 260 feet east of the crossing would be able to see a southbound Club Wagon when 30 feet north of the north rail.

It is not contended that the verdict is excessive; consequently, evidence relating to pecuniary loss has been omitted from the statement.

As acknowledged by appellant, it was proper to receive evidence showing the physical circumstances of the crossing; and, as observed in Honeycutt v. Missouri Pac. R. Co., Mo., 440 S.W.2d 481, 485, " 'The conditions surrounding this crossing were such that (defendant) was bound to know that they were unusual and that the roadway was thereby rendered more dangerous by reason of the approach thereto than if the surrounding conditions had not existed; and it was its duty to have taken ordinary precautions such as were commensurate with and required by the circumstances surrounding to protect persons ap-

proaching the crossing for the purpose of crossing thereon, that might not have been required under other conditions.' " See also, Baldwin v. Atchison T. & S. F. Ry. Co., Mo., 425 S.W.2d 905, 912 [7], that "The known circumstances enter into the care required of defendant." So tested, under the evidence the defendant could reasonably be expected to keep a careful lookout for motorists who might not hear the warning bell and would thus be oblivious to a train's approach.

Under the evidence defendant's lookout reasonably could be found less than careful. The jury reasonably could have found that defendant's engineer, when 260 feet east of the crossing, could see deceased's vehicle when it was at least 30 feet north of the crossing. It was going only 5 to 10 miles per hour and came to a stop before being struck. Since it stopped in that distance, its average speed could be inferred to have been 5 miles per hour or less, and that it would take approximately 5 seconds to go from the 30-foot point to the point of stopping. Despite the 260 feet of sight distance, the engineer did not see the vehicle until only about 75 feet away from the crossing, approximately one second before collision. The engineer's look at his speedometer might account for his failure to see deceased sooner but, in any event, the failure to see sooner is clear.

■ Appellant argues that if it be assumed the whistle was not sounded, there was no time after seeing the vehicle only 75 feet away to react and sound the warning. This is probably true but it does not absolve defendant because under Missouri's humanitarian doctrine, the engineer should have seen deceased's vehicle sooner. " 'A failure to keep a lookout, *at a place where there is a duty to do so,* is not * * * any excuse for failing to prevent injury to one whose peril could have been discovered in time to prevent his injury if such a lookout had been kept. In other words, in spite of a failure to keep a lookout, the humanitarian doctrine may come into operation, not because that is in itself humanitarian

negligence,' " but because at places where there is a duty to keep a lookout, the humanitarian rule has been extended " 'to discoverable as well as discovered peril.' " Womack v. Missouri Pac. R. Co., 337 Mo. 1160, 1165, 88 S.W.2d 368, 370 [1].

■ Under the evidence, it would be reasonable for the jury to find that the engineer should have seen the deceased's vehicle when it was first in view, realized the danger, and sounded the whistle. The day was windy and rainy; the crossing bell was inaudible under those conditions; the train was behind schedule. The deceased would, in his duty to look, look in both directions and thus "have accounted for the loss of a crucial two or three seconds." Baldwin v. Atchison T. & S. F. Ry. Co., supra, 425 S.W.2d l. c. 911 [1]. In such a case, "the zone of imminent peril began and the duty of the engineer arose when it was or should have been reasonably apparent to him that the truck driver was oblivious of the approaching train and was intent on continuing across its path, * * * and it was his duty to act on reasonable appearances and at a time when action would be effective. * * * It is enough that the circumstances are such as to indicate a reasonable chance that this is the case. Even such a chance that the plaintiff will not discover his peril is enough to require the defendant to make a reasonable effort to avoid injuring him. * * * If a train is at some little distance, the blowing of a whistle would ordinarily be enough. * * *" Wabash R. Co. v. Dannen Mills, Inc., 365 Mo. 827, 832, 288 S.W.2d 926, 929 [3, 4]. Defendant should not have assumed that deceased would stop his vehicle prior to collision, but, under the facts, should have noted there was a "reasonable chance" that the driver would not then expect the train. Campbell v. Chicago B. & Q. R. Co., Mo., 405 S.W.2d 899, 903.

Much of appellant's argument rests on the assertion that the train and crossing bells were sufficient to discharge its duty

to decedent, but under the circumstances of this case, "the jury could reasonably have found that the bell alone was not an adequate warning." Wabash R. Co. v. Dannen Mills, Inc., supra, 288 S.W.2d l. c. 931. Appellant's answer to this has been that the engineer sounded the whistle; but Mrs. Bauman, who lived near the track, knew the whistle to be clearly audible in her house, and heard the crash but never heard the whistle, and "Testimony of a wtiness that he did not hear * * * is positive and probative evidence where it is probable or reasonably certain in the circumstances shown that the witness could or would have heard * * * if the event had occurred." Black v. Kansas City Southern R. Co., Mo., 436 S.W.2d 19, 23 [2, 3]; Hackett v. Wabash R. Co., Mo., 271 S.W.2d 573, 578 [12]; Knorp v. Thompson, 357 Mo. 1062, 212 S.W.2d 584, 588 [6]. Additionally, the engineer's testimony was that he started his long whistle when "something like" 50 feet from the crossing, and the short time it would take the train to reach the crossing from that point at its speed rendered it ineffective as a warning.

All of these circumstances indicate reasonably that defendant should have seen decedent about 5 seconds before the collision and then sounded the whistle; that decedent was approaching the crossing slowly and without effective warning stopped almost soon enough to escape collision; that if a prompt whistle warning had been sounded, decedent might have stopped the short distance sooner necessary to avoidance. The case is similar to Jackson v. St. Louis-San Francisco Ry. Co., 357 Mo. 998, 1009, 211 S.W.2d 931, 938 [8], where, if plaintiff had been given a whistle warning, "perhaps he would not have gone forward into danger but would have stopped short of the danger zone * * * 'The jury could have reasonably inferred that a sudden blast of the whistle would have been heard, heeded and acted upon by plaintiff at that time.'"

■ Instruction No. 5 submitted the question of damages to the jury and con-

tained the authorization to consider "any aggravating circumstances attendant upon the fatal injury." Appellant concedes that the instruction conforms to Forms 5.02 and 5.09, Missouri Approved Jury Instructions, Second Edition, but contends that giving it in this case violated the caveat in the Notes on Use to "Be very sure the evidence supports this submission." Appellant contends that to authorize a submission of aggravating circumstances there must be evidence that the death was caused by willfulness, malice, wantonness, recklessness, conscious negligence, or wrong intent, Mauzy v. J. D. Carson Co., Mo.App., 189 S.W.2d 829, 834–835 [6], and that since the only eyewitness was the engineer, there is no proof suggesting any one of these elements.

Appellant's contention overlooks that it is the St. Louis-San Francisco Railway and not Engineer Moore who is the defendant in this case. The defendant was shown to have permitted an increasingly busy crossing to have been guarded only by bell signal which could not be heard except under optimum conditions. It was also shown that other persons in the Imperial community had experienced narrow escapes from collisions at the crossing in question. Written request had been made for improvement of the crossing. Yet, despite all these circumstances, at the time of this tragedy defendant's train, hours behind schedule, was operated through the described crossing without effective warning of its approach; and the presence of any of the elements of aggravating circumstances was properly an issue for the jury to resolve. Tripp v. Choate, Mo., 415 S.W.2d 808, 813 [2]; May v. Bradford, Mo., 369 S.W.2d 225, 229 [9–11]; Hertz v. McDowell, 358 Mo. 383, 214 S.W.2d 546, 550–551 [10–11].

Finally, appellant makes several charges of error "in admitting incompetent evidence":

(a) In permitting witnesses Nixon, Allard, Roark, Pinkston, Keiser, Studer, and

Harrell to testify on such matters as their experiences with the crossing in question, its hazardous nature, complaints made about it, and requests made of the railroad to improve it with flashing light signals;

(b) In permitting witnesses Naes and Kenny to testify to the general reputation of decedent and that he had a good reputation;

(c) In permitting witness Lowry to testify that defendant installed flasher lights subsequent to the collision in question. The thrust of appellant's argument is that these witnesses were permitted "to establish a dangerous crossing, a weak crossing bell, demands made upon defendant by laymen to install flasher lights on account of the very dangerous crossing, etc. Now the question arises, what on earch did this have to do about sounding a warning when decedent was in a position of immediate danger? * * * we must naturally assume that the plaintiffs produced all of these witnesses to give incompetent evidence for the sole purpose of misleading the jury, so that they could obtain a decision from the jury, not upon humanitarian negligence but upon issues that had nothing to do with the merits of the case."

■ The testimony from witnesses with respect to their difficulties in hearing the bell at the crossing and their complaints and requests bore upon defendant's duty to keep a lookout, in that "The necessity of a lookout was heightened here by the very nature of the crossing and its user," Baldwin v. Atchison T. & S. F. Ry. Co., supra, 425 S.W.2d l. c. 913, and, as previously stated, it was proper to show the physical circumstances of the crossing, Honeycutt v. Missouri Pacific, supra. This evidence also tended to show defendant's knowledge of likely obliviousness of motorists generally, and deceased, as they approached the crossing. It would be safer

for the railroad to assume the likelihood of a stop if the crossing was guarded by a signal more effective than the described bell warning.

■ Appellant's characterization of testimony concerning the deceased as evidence of "general reputation" is erroneous in that the testimony in question was that of witnesses having personal knowledge of the help, comfort and support given his family by deceased. As such, it went to the pecuniary loss plaintiffs, as decedent's survivors, sustained. In a death claim it is proper to show conditions such as health, earning capacity, age, and habits of the deceased in determining his earning capacity and contribution to support of his dependents. Morton v. Southwestern Telegraph & Telephone Co., 280 Mo. 360, 217 S.W. 831, 835–836 [9, 10].

■ The testimony with respect to installation of flashing light warnings at the crossing subsequent to the collision came from witness Garland Lowry, a surveyor. He had made a plat, Exhibit 5, of the crossing and sight distance and was relating it to a ground level photograph, Exhibit 7, of the crossing. The photograph had been made subsequent to installation of the flashing lights and the testimony was received to explain how the pictured scene differed from the scene at the time of the collision, and admission for that purpose was proper. Henwood v. Chaney, 8 Cir., 156 F.2d 392, 396; State ex rel. State Highway Commission v. Eilers, Mo., 406 S.W.2d 567, 571; Brock v. Gulf M. & O. R. Co., Mo., 270 S.W.2d 827; Reed v. Coleman, Mo.App., 167 S.W.2d 125.

Appellant, in presenting its points, cited a number of other cases without demonstrating their application in the argument portion of its brief. Suffice to say that examination shows them to be distinguishable on their facts, and they are not incon-

sistent with the authorities cited in support of this decision.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.