Roy WEAST, Administrator, et al.,
**Plaintiff-Respondent,**

v.

**FESTUS FLYING SERVICE, INC.,**
**Defendant-Appellant.**

No. 47281.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 25, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 30, 1984.

---

Cyril J. Clancy, St. Louis, for defendant-appellant.

Douglas Patrick Dowd, St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

Defendant Festus Flying Service, Inc., appeals from a judgment against it, based on a wrongful death claim in which a jury awarded the deceased's parents, Roy and Jeanette Weast, $200,000 in damages. We affirm.

In November, 1978, Richard Dodson was employed as a pilot by defendant Festus Flying Service, Inc. Dodson was dispatched from St. Louis by Gary Penrod, vice presi-

dent of the defendant corporation, on November 13, 1978, to carry mail from Topeka to Kansas City, to Wichita, to Hays, and to Dodge City, Kansas. On November 16th, at about 3:00 a.m., the airplane crashed on its approach to Hays, Kansas, approximately six miles short of the runway, killing Dodson and his wife Janice, daughter of plaintiffs. Richard and Janice Dodson had no children.

Meteorological reports indicated that conditions at the time of the crash could be hazardous to light aircraft due to moderate icing, clouds, and precipitation over Kansas and the eastern plains of Colorado. There were several pilot reports relayed through Wichita and Kansas City which confirmed that icing was occurring in the area. The FAA accident report indicated that, at the time and place of the accident, there was an indefinite ceiling estimated at 200 feet; the sky was obscured; and there was light freezing drizzle and fog, with a surface temperature of 31 degrees. There was expert testimony that ice was on the propellers at the time of impact, as well as on the airfoil and the body of the aircraft.

The anti-icer pump had been removed from the aircraft by defendant's mechanic one to three weeks before the flight because the pump had been inoperative. The purpose of the pump was to disburse alcohol onto the windshield and propellers to prevent ice from forming.

The mechanic failed to inform Richard Dodson that the pump had been removed. Defendant's Operations Manual regarding general maintenance procedures required that, following any maintenance, appropriate entries be made in aircraft and engine logbooks, flight logbook and other company maintenance records prior to flight. No record of the pump's removal was made in the aircraft or engine logbook. There was testimony that such an entry was made in the flight logbook, which was carried on the aircraft and apparently destroyed in the fire that followed the crash. However, a pilot who had flown the aircraft three days before Dodson commenced the fatal trip testified there was no such entry in the flight logbook. No evidence was presented that Dodson was aware that the pump had been removed. The jury could have reasonably concluded from the evidence that, owing to the lack of a pump, ice formed on the propellers and caused the aircraft to crash.

■ In its principal point on appeal, defendant maintains that the trial court erred in refusing to sustain defendant's motion for directed verdict at the close of all the evidence. Defendant's initial argument for this point is that the trial court erred in submitting a simple negligence instruction, because there was evidence that Mrs. Dodson was an unauthorized passenger on the aircraft. Thus, defendant maintains, plaintiffs could recover only by proving willful, wanton or reckless conduct, and there was no evidence of such conduct here. We rule the point against defendant.

In order to determine the liability of defendant as owner and operator of an airplane, and thus the degree of care owed by defendant to Mrs. Dodson, it is essential that we establish whether the jury could find that Mrs. Dodson was a guest on the airplane or an unauthorized passenger. As mentioned above, Gary Penrod, vice president and part owner of Festus Flying Service, Inc., dispatched Dodson from Lambert Airport in St. Louis County. Dodson was to fly to Topeka, there to pick up mail to be transported to Kansas City, to Wichita, to Hays and to Dodge City, in that order. The trip was to include spending nights in two cities, Topeka and Dodge City. When asked by Dodson whether Dodson's wife could accompany him, Penrod gave Dodson permission to take her to his "domicile." According to Penrod, "domicile" in flight language means where a pilot is based or where he will spend a night. Because Dodson was to spend the night in Dodge City, Penrod testified that Dodge City would have been his domicile as well as Topeka. In actions consistent with the belief that his wife was an authorized passenger, Mr. Dodson filed official flight plans for each leg of the flight to Dodge City which reflected her presence on board. Penrod sub-

sequently testified that he, as vice president, had authority to dispatch the flight taken by Dodson and his wife; however, he had only given Dodson permission to take his wife to the first domicile, Topeka, not the remainder of the flight.

We view the overall testimony of Mr. Penrod as equivocal at best and determine that there was sufficient evidence for the jury reasonably to conclude that Mrs. Dodson was an authorized passenger at the time of the crash. The degree of care required of defendants toward Mrs. Dodson stems from the general principles relating to negligence. *Linam v. Murphy*, 232 S.W.2d 937, 941 (Mo.1950). That body of law dictates that " 'an employer is liable to a third person for an injury to either person or property which results proximately from tortious conduct of an employee acting within the scope of his employment ...' " *Id.* The evidence is uncontroverted that Mrs. Dodson was an authorized passenger for part of the trip. *Cf. Jones v. Avco Manufacturing Corporation*, 218 F.2d 406, 408 (8th Cir.1955). The pilot undertook this flight on a specific mission for defendant, *Cf. Grimm v. Gargis*, 303 S.W.2d 43, 48 (Mo.1957), and defendant was aware that Mrs. Dodson would be aboard.

■ As indicated, Penrod's testimony relating to whether Mrs. Dodson was an authorized passenger beyond the point of first domicile was equivocal. This, in itself, warranted denial of the motion for directed verdict based on the reasons advanced by defendant. If there was evidence from which the jury could conclude (as it did) that Mrs. Dodson was an authorized passenger, she was entitled to at least ordinary care.[1] Thus, whether there was evidence of recklessness was not controlling on the issue of whether defendant's motion should have been granted. In determining whether a trial court erred in denying a defendant's motion for a directed verdict, we review the evidence in the light most favorable to the plaintiff, "giving him the benefit of all reasonable inferences to be drawn therefrom ..." *Kagan v. St. Louis Public Service Company*, 360 S.W.2d 261, 263 (Mo.App.1962). Application of such standard here makes it clear that the trial court did not err in denying the motion.

Additionally, defendant argues that the trial court erred in denying its motion for directed verdict because plaintiffs failed to prove that they suffered pecuniary loss as a result of their daughter's death. We disagree.

Plaintiff Roy F. Weast, the father of the decedent, testified that his daughter assisted the family in a variety of capacities during her lifetime. Janice rendered regular nursing services to Mr. Weast's disabled mother, including giving her medication, feeding her, clothing her, cleaning her, and doing the shopping, cooking, and laundry. After Janice's death, Mr. and Mrs. Weast were required to provide all of the care for Mr. Weast's mother. Mr. Weast further testified that Janice consistently brought things for them when she came to visit; she treated her four brothers and sisters with equal generosity, buying them such things as sweaters and jewelry. In the month prior to her death, Janice made a direct financial contribution to Mr. Weast in the amount of $450.00. Janice's mother, Jeanette Weast, similarly testified to the contributions Janice made to them, in terms of rendering services around the house and bringing clothing, books, furniture, and other items for the house.

In the matter of determining whether plaintiffs proved that they sustained pecuniary loss, we are mindful of the standard established by case law under the wrongful death statutes: "The test of the right of recovery ... is the reasonable probability of pecuniary benefit from the continued life of the deceased, or a pecuniary injury from the death,—and not that of strict legal dependency." *Domijan v. Harp*, 340 S.W.2d

---

1. We note that the factual issue of Mrs. Dodson's status on the aircraft was clearly and succinctly put before the jury in an instruction submitted by defendant which read, "Your verdict must be for the Defendant if you believe that Plaintiffs' decedent was in the airplane contrary to Defendant's instruction."

728, 734 (Mo.1960). That Janice had no legal obligation to contribute to the support of or provide services to her parents at the time of her death does not bar their claim. *Id.*

Plaintiffs' evidence clearly· established that they derived pecuniary benefit from their daughter, and the untimely termination of her life warranted a finding that her death constituted a pecuniary loss to them. *Schwarz v. Gage,* 417 S.W.2d 33, 36 (Mo.App.1967). The numerous and regular illustrations of assistance and support, in the form of financial contributions and personal services rendered by the deceased adequately establish such loss. *Grothe v. St. Louis-San Francisco Railway Co.,* 460 S.W.2d 711, 718 (Mo.1970). See *Richeson v. Hunziker,* 349 S.W.2d 50, 52–53 (Mo. 1961). There was sufficient evidence presented to warrant "an inference of decedent's probable willingness and ability to continue such services in the future..." *Richeson,* supra, at 53. The trial court did not err in denying the motion for directed verdict for lack of evidence of pecuniary loss.

In its next point, defendant argues that the trial court erred in submitting instruction no. 9, the damages instruction. Instruction no. 9, based on MAI 5.01, was given to the jury as follows:

If you find in favor of Plaintiffs, then you must award Plaintiffs such sum as you believe will fairly and justly compensate Plaintiffs for any damages you believe they sustained and they are reasonably certain to sustain in the future as a direct result of the fatal injury to Janice Dodson.

In assessing damages, you may take into consideration any aggravating circumstances attendant upon the fatal injury.

Defendant bases its contention that this instruction was erroneously submitted on various arguments previously discussed and found to be without merit. Its remain-

ing argument is that plaintiff failed to plead [2] or prove willful, wanton, reckless or indifferent conduct as evidencing aggravating circumstances. As to this argument as well, we must find against defendant.

As indicated previously, defendant's mechanic had removed the anti-ice pump from the aircraft one to three weeks prior to the crash. Without the pump, alcohol could not be disbursed onto the windshield or the propellers. The fact of its removal was known not only to the mechanic but also to defendant's chief of maintenance, John Halterman, and to defendant's president, Howard Williams. None of them warned Mr. Dodson that the pump had been removed. Similarly, the fact of its removal was not recorded in the aircraft or engine logbook. Three days before Dodson commenced his journey, another pilot examined the flight log, which was carried on the plane, and found no notation that the pump had been removed. There was also evidence that absence of the pump caused the aircraft to be not "airworthy" under existing weather conditions. Moreover, at the time of the crash, Dodson, in carrying out defendant's orders, had exceeded the number of flight hours permitted by federal regulation in any twenty-four hour period.

Section 537.090, RSMo 1978, specifically authorizes the trier of fact to consider "aggravating circumstances attending the death" in connection with the amount of damages. Defendant correctly argues that, in order for the issue of aggravating circumstances to be submitted to the jury, there must be a showing of " 'willful misconduct, wantonness, recklessness, or a want of care indicative of indifference to consequences,' " for it to warrant the submission of the issue of aggravating circumstances to the jury. *Wiseman v. Missouri Pacific Railroad Company,* 575 S.W.2d 742, 752 (Mo.App.1978). We are of the opinion that the facts concerning defendant's removal of the pump, defendant's fail-

---

**2.** Insofar as this point relates to any claimed deficiencies in the pleadings, we note that each count of the petition alleged that the acts of negligence set forth therein constituted aggravating circumstances, thus adequately alerting defendant to the nature of the claims.

ure to advise Dodson of its absence or even to make a record of the removal where Dodson might learn of it, together with the fact the aircraft was dispatched into icing conditions under the control of a pilot who, in the performance of his duties, had exceeded maximum allowable flight time, warranted the submission. See *Mudd v. Quinn,* 462 S.W.2d 757, 760–761 (Mo.1971). At the very least, these matters constituted "want of care indicative of indifference to consequences." *Wiseman,* supra. The point is ruled against the defendant.

Defendant next contends the trial court erred in giving the verdict directing instruction because it submitted two theories of defendant's liability in the disjunctive. Defendant claims that neither was supported by the evidence. The portions of the instruction of which defendant complains are:

Your verdict must be for Plaintiffs if you believe: ...

Defendant permitted the airplane to be flown into known or forecast light or moderate icing conditions without functioning antiicing equipment protecting the propellers or the windshield, or

Defendant permitted Richard Dodson to fly the airplane in a fatigued condition,

...

With respect to the first theory, defendant points out that there was evidence in the plaintiff's case that the aircraft did have anti-icing equipment to protect the windshield. And so there was. The president of the defendant corporation testified that the aircraft had an anti-ice pump for the windshield. He also testified that Dodson purchased alcohol for the aircraft during his stop in Wichita which would indicate that the pilot was using alcohol on the windshield. This argument totally ignores the testimony of defendant's mechanic who stated that the pump he removed supplied the alcohol for both the windshield and the propellers. It also ignores the defendant's own aircraft maintenance report bearing Mr. Dodson's name and date of November 14, 1978, which indicated that the alcohol reservoir tank was leaking and which would account for the need of alcohol.

Concerning Dodson's fatigued condition, while there is evidence that Dodson was off duty for some ten hours during the twenty four hours preceding the crash, there was also evidence that he logged thirteen hours of pilot time during that same twenty-four hour period. Defendant's president admitted that such a schedule violated federal regulations relating to rest time of pilots. Plaintiffs also presented expert testimony that Dodson "was significantly affected by fatigue at the time of the crash."

It is a familiar rule that, when an instruction presents theories of liability in the disjunctive, each must be supported by substantial evidence. In determining the sufficiency of the evidence, we view it and all reasonable inferences therefrom in the light most favorable to the verdict. *Smith, Etc. v. Archbishop of St. Louis, Etc.,* 632 S.W.2d 516, 521 (Mo.App.1982). In the instant case, there was ample evidence from which the jury could conclude both that the defendant permitted operation of the aircraft without windshield or propeller anti-icing equipment and that it permitted the pilot "to fly the airplane in a fatigued condition." The point is denied.

Defendant's remaining points are essentially variations on the points addressed herein and merit no further attention. The judgment below is affirmed.

GAERTNER, P.J., and SMITH, J., concur.