**Ronald BRAGG, Plaintiff–Respondent,**

**Rebecca Hampsten, Plaintiff–Appellant,**

**and**

**Roger Barton, Plaintiff,**

v.

**MISSOURI PACIFIC RAILROAD CO. and National Passenger Railroad Corp., Defendants.**

No. 57014.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 1, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1990.

Application to Transfer Denied
July 31, 1990.

See also 756 S.W.2d 666.

Walter L. Floyd, Jr., Charles M. Shaw, Alan Agathen, Clayton, for plaintiff-appellant.

James S. Collins, II, St. Louis, Joseph Howlett, Clayton, for plaintiff-respondent.

CRANDALL, Presiding Judge.

Twanna Marie Bragg (Marie) was killed when the car she was driving was struck by a train. Ronald Bragg, the surviving husband of Marie (husband), Rebecca Hampsten, the mother of Marie (mother), and Roger Barton, the father of Marie (father), brought an action for the wrongful death of Marie against Missouri Pacific Railroad Co. and National Railroad Passenger Corporation. Husband, mother, and father were entitled to bring the action as members of class (1) under Section 537.-080(1), RSMo (1986). The case was settled for $195,000, and the money was ordered paid into the court registry.

Thereafter, an apportionment hearing was held. *See* Section 537.095.3, RSMo (1986). The trial court ordered, *inter alia,* that husband receive 90 percent of the settlement fund in the amount of $175,500, together with accrued interest; that mother receive eight percent of the settlement fund in the amount of $15,600, together with accrued interest; and that father receive two percent of the settlement fund in the amount of $3,900, together with accrued interest. Mother appeals from the trial court's order of apportionment. We affirm.

The standard for review of apportionment of the proceeds of a claim in a wrongful death action is set forth in the oft-cited *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

When Marie died, she was eighteen years of age and had been married to husband for six months. Marie and husband had a loving marriage, and husband has not remarried since Marie's death. Marie was employed, earning approximately $3.35 per hour and $135 per week. Her life expectancy was 61.8 years. Assuming Marie would have worked 47 more years at this pay rate, the trial court found her lost earnings to be approximately $329,940. Marie also performed normal wifely duties for husband. After Marie's death, husband paid Marie's funeral expenses of approximately $10,000 and continued paying the married couple's debts for their mobile home and their two vehicles.

The trial court found Marie and mother had a close mother-daughter relationship during Marie's childhood, but that their relationship became strained during Marie's teenage years. Mother and father were divorced when Marie was 18 months of age. Mother had custody of Marie until

Marie married husband, and during her childhood, Marie, her sister Michelle, and mother often went camping, fishing, and shopping together. Mother also sent Marie to stay with relatives in Alaska for three months and in Hawaii for six months. For a period of two months before her marriage, Marie left mother's home and stayed with husband at husband's parents' home because of difficulties between Marie and mother. There was no evidence that Marie's death caused mother any direct pecuniary loss.

Mother claims the trial court erred in awarding her only eight percent of the settlement sum because the award resulted from a misapplication of the law. She argues that the trial court erroneously limited her recovery to the "pecuniary benefit" she derived from Marie.

■ Preliminarily, we consider husband's argument that the trial court's "Findings of Fact, Conclusions of Law, and Order" were voluntary and therefore present no question for review other than as a general finding. He argues mother is thereby precluded from assigning as error on appeal a specific finding of fact or conclusion of law or the lack thereof. *Motley v. Colley,* 769 S.W.2d 477, 479 (Mo.App. 1989).

Rule 73.01(a)(2) provides that in a bench-tried case "[i]f any party so requests before final submission of the case, the court shall ... file, a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded ..." Here, after the apportionment hearing was concluded and before final submission of the case, the attorneys for the claimants submitted, without objection, proposed findings of fact, conclusions of law, and orders at the direction of the trial court. The filing of the proposed findings constituted at least a tacit request by the parties for a written explanation by the trial court of the basis for its decision. The trial court then prepared and filed an opinion containing the grounds for its decision and the method of apportioning the damages. Thus, the trial court's findings were not *ex gratia* within the meaning of *Mot-*

*ley.* We therefore consider mother's specific claim of a misapplication of the law based upon conclusions of law contained in the trial court's opinion.

■ In its conclusions of law, the trial court stated, *inter alia:*

4. In order for plaintiffs Hampsten and Barton to recover for the death of their daughter, there should be evidence of regular financial contribution or personal services to them from Marie, from which they derived pecuniary benefit. *Weast v. Festus Flying Service, Inc.,* 680 S.W.2d 262, 262–263 (Mo.App.1984). There has been no such evidence adduced.

5. Parents are entitled to establish a reasonable probability of pecuniary benefit from the continued life of a child beyond majority or emancipation. *See Mitchell v. Buchheit,* 559 S.W.2d 528, 532–533 (Mo. banc 1977). The Court is empowered to make a pecuniary reward for the token loss of services although such an award is speculative and intangible. *Collins v. Stroh,* 426 S.W.2d 681, 689–690 (Mo.App.1968). Based upon this authority, the Court ascribes a token pecuniary benefit to the companionship and comfort Hampsten and Barton might have received from Marie.

The *Weast* case, cited in the trial court's conclusions of law, involved an action for wrongful death in which the applicable statute governing damages was Section 537.090, RSMo (1978). In *Weast* the court stated the test for the right to recover was "'the reasonable probability of pecuniary benefit from the continued life of the deceased, or a pecuniary injury from the death,—and not that of strict legal dependency.'" 680 S.W.2d at 265–66 (quoting *Domijan v. Harp,* 340 S.W.2d 728, 734 (Mo.1960)). The present statute, Section 537.090, RSMo (1986), differs from the former statute because it allows evidence of and recovery for nonpecuniary as well as pecuniary damages. Wright, Damages Under the Missouri Wrongful Death Act, 37 J.Mo.Bar 92, 94–95 (1981).

There was no evidence of a direct pecuniary loss suffered by mother. Under a liter-

al and isolated application of law stated by the trial court in paragraph four of its conclusions of law, mother was not entitled to any proceeds from the apportionment. The trial court awarded her eight percent of the settlement sum as the reasonable value (albeit using the term "pecuniary benefit") of mother's loss of companionship and comfort. The trial court may have misstated the law by purporting to limit mother's right to recover only pecuniary damages. It did not, however, misapply the law because it in fact apportioned damages for nonpecuniary losses. We therefore find no error.

Finally, the trial court acted within its discretion in limiting mother's recovery to eight percent of the settlement fund. The necessary result of an apportionment is that each party ends up with part of a finite amount; consequently, the more one party is awarded, the less the others receive. *Motley*, at 479. Husband adduced substantial evidence of direct pecuniary losses potentially exceeding the amount of the settlement. While mother argues that she is entitled to more than eight percent, she does not articulate any reason why the other parties should receive less than the percentage they received. Marie's marriage itself can be considered as a factor limiting recovery by her parents. 1 S. Speiser, Recovery for Wrongful Death 2d Section 4:39 (1975); 17 Washburn L.J. 73, 84 (Fall, 1977). Mother's point is denied.

The order of the trial court is affirmed.

JOSEPH J. SIMEONE, Senior Judge, and KAROHL, J., concur.